STATE of Minnesota, Respondent,

v.

William T. HANSEN, Sr., Appellant.

No. 50539.

Supreme Court of Minnesota.

Nov. 6, 1981.

William Mauzy, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas Fabel, Deputy Atty. Gen., and Elizabeth Cutter, Sp. Asst. Atty. Gen., St. Paul, Robert Walter, County Atty., Glenwood, for respondent.

PETERSON, Justice.

The critically important question raised on this appeal by a convicted criminal defendant is whether the trial court erred in admitting, as substantive evidence of defendant's guilt, the out-of-court statements of two declarants who refused to testify at defendant's trial. Consideration of this issue requires an analysis of the scope and application of Minn.R.Evid. 804(b)(3), dealing with admissibility of statements against interest, and Minn.R.Evid. 804(b)(5), dealing with statements by an unavailable declarant which are trustworthy but which do not fit within any of the standard exceptions. Also at issue is whether admission of the statements violated defendant's constitutional right to confront witnesses against him. We conclude that the judgment of conviction must be reversed because introduction of the declarations violated both the hearsay rule and the confrontation clause of the sixth amendment, as incorporated in the fourteenth amendment, of the United States Constitution.

On the evening of March 14, 1978, Allen Krook, a private security guard, and Mark Hedner, a Pope County Deputy Sheriff, were on duty at a powerline construction site located in rural Pope County, near the town of Villard. Both were seated in a Ford Bronco, with Krook in the driver's seat and Hedner in the passenger's seat. At approximately 11:58 p. m., a vehicle drove onto the construction yard and stopped about 40 to 50 yards from the Bronco. The unidentified vehicle appeared to be a four-wheel drive vehicle, light in color, with clearance lights on the cab. After the guards heard two gunshots, Krook opened the Bronco door and the dome light went on. Immediately, an armor-piercing bullet was fired through the guards' vehicle, shattering the front windshield and causing fragments of glass and metal to strike Krook's face and chest. At least two more shots were fired before the vehicle left the site.

Two weeks later, in response to an announcement by the United Power Association/Cooperative Power Association of a $50,000 reward for information leading to the conviction of any participant in the shooting incident, Ardys Fischer, the estranged wife of one of the participants, Harold Fischer, came forward and agreed to give a statement to agents of the Minnesota Bureau of Criminal Apprehension. After being advised of her rights relative to the reward, she proceeded to give a statement in the presence of her attorney and in his office. She stated that she returned home on March 14 at approximately 11 p. m. and found her husband, Harold Fischer; her daughter and son-in-law Tamara and Darrell Bartos; Darrell's brother, Tony Bartos; Matt Woida; defendant; and two of defendant's sons talking in the kitchen. She believed that defendant had arrived at her home in a green coupe, either a Chevy Nova or Plymouth Duster. The men gathered in the kitchen were doing "a lot of talking" about leaving for the construction site. She stated that she heard the men say that they were going to the yard site to "mess up a crane" and shoot at the guards' vehicle. She indicated that the group was split between dissenters and promoters and that "Woida and the Hansens" were the ones who encouraged the shooting.

On April 6, 1978, MBCA agents interviewed Harold Fischer, Ardys' husband, after giving him a *Miranda* warning but as-

suring him that if he gave a statement the state would not charge his wife or daughter and that he would be charged with a misdemeanor offense instead of attempted murder.

During the interview, Mr. Fischer stated that he was at home on March 14 when defendant, defendant's two sons, and Matt Woida arrived. After deciding to go to a construction site, the group transferred high-powered rifles and armor-piercing ammunition from the car in which defendant arrived, a green coupe, to Darrell Bartos' pickup. He said that they then left in the pickup, which was driven by Darrell, with all the passengers riding in the back of the truck except Anthony Bartos and Matt Woida. He claimed that he "just rode along" but that the other men shot at the powerline equipment and then at the vehicle in which the guards were sitting. Although he said he could not remember who actually fired the shots, he observed that the shots were fired from the back of the pickup, where defendant and his two sons were riding. After shooting at the vehicle, the group returned to the Fischer residence and immediately dispersed.

After taking the recorded statement from Harold Fischer, the agents had it transcribed and took it to him for his signature. He refused to sign, stating that it was true and that he was not going to change it, so it was unnecessary for him to sign it.

Agents also interviewed Darrell and Tamara Bartos and obtained from them statements consistent with the statements given by the Fischers. In addition, Darrell gave to police the tires which he admitted removing from his pickup after the shooting.

Based on the evidence obtained, the state arrested defendant, Harold Fischer, Matt Woida, and defendant's sons, William E. Hansen and William T. Hansen. This case involves only the trial of defendant, who was charged with three counts of aggravated criminal damage to property.

At the commencement of trial, the court granted the state's petition for an order compelling testimony and granting Harold Fischer immunity from prosecution. When Mr. Fischer was called as a witness, he refused to testify, invoking his fifth amendment privilege. He was found in contempt and committed to the custody of the sheriff. The court later issued an order compelling Ardys Fischer to testify and granting her immunity from prosecution pursuant to Minn.Stat. § 609.09 (1980). Mrs. Fischer, however, indicated that she would not comply with the court order and also refused to testify. She was found in contempt, but summary punishment was not imposed. Mrs. Fischer refused to answer the court's question as to whether her refusal to testify was due to any threats made to her by defendant. She did submit an affidavit to the court, stating that her refusal to testify was not due to threats made to her by defendant. However, she would not submit to an oral examination *in camera* concerning her reasons for refusal to testify.

Tamara Bartos, Darrell Bartos, and Anthony Bartos were all granted immunity and were called as witnesses. They also refused to testify, invoking the fifth amendment, and were held in contempt.

The state then moved for admission of the statements given by Ardys and Harold Fischer. Defendant objected to the statements on the grounds that they were hearsay and violated defendant's sixth amendment right to confrontation.

The state asserted that the Harold Fischer statement was a statement against penal interest, falling within the exception to the hearsay rule provided by Minn.R.Evid. 804(b)(3). It also contended that the Ardys Fischer statement was admissible under Minn.R.Evid. 804(b)(5), the residual hearsay exception for statements characterized by unusual trustworthiness. In addition, the state argued that defendant had waived his right to confrontation because of threats made by defendant to witnesses.

The court then held an in-chambers hearing as to whether threats had been made against Harold or Ardys Fischer. One of the MBCA agents testified that Harold Fischer, in his statement, said, "You don't

dare say anything, you get smoked you know, hell, they'd kill you." Mr. Fischer also was quoted as saying, "This party from Wadena, I'm just scared, I mean you know, no matter what, you know, you say or do, you're going to get smoked, that's all." The agent then asked whether "that party" was defendant. Fischer replied, "Yeah that's the party I mean." Also, the agents had talked with Mr. Fischer while he was being incarcerated for contempt. At that time, he told them, "Well, there's one thing about it, they can't get to me in here."

After considering the arguments and the evidence, the trial court concluded that Harold Fischer's statement was admissible under 804(b)(3), and Ardys Fischer's statement was admissible under 804(b)(5). The court further determined that defendant, by his conduct, had waived his sixth amendment right to confrontation. It was noted that both Fischers would be available for cross-examination by defendant at trial. Before the statements were read into evidence, the trial court deleted several sections on the basis of evidentiary objections.

The state presented evidence which corroborated the statements of the Fischers. There was testimony by a crime lab analyst that the truck tire imprints at the scene were consistent with having been made by tires on the Darrell Bartos' pickup truck. There was evidence that Darrell Bartos' pickup truck matched the description of the truck given by the guards. In addition, in accord with the statement that defendant had come to Fischers' in a green coupe, state motor vehicle records were presented indicating that a green 1974 Plymouth Duster was registered to defendant's son. Further, to refute defendant's contention that

he did not know any of the other alleged participants, telephone records were produced showing calls made from defendant's residence to Matt Woida.

Defendant was found guilty by the jury on three counts: (1) aggravated criminal damage to property, causing a reasonably foreseeable risk of bodily harm in violation of Minn.Stat. § 609.595, subd. 1(1) (1980); (2) aggravated criminal damage to property, reducing the value of the property by more than $300 in violation of Minn.Stat. § 609.595, subd. 1(3) (1978); and (3) conspiracy to commit aggravated criminal damage to property in violation of Minn.Stat. § 609.175, subd. 2(3) (1980), and Minn.Stat. § 609.595, subd. 1(3) (1978). He was sentenced by the court to concurrent terms of 2 years.[1] Defendant now appeals, contending that his conviction should be reversed and that a judgment of acquittal be entered or, in the alternative, that he be granted a new trial.

1. The unsigned statement of Harold Fischer was admitted into evidence by the trial court as a statement against Mr. Fischer's penal interest under Minn.R.Evid. 804(b)(3), which provides in relevant part that if the declarant is unavailable as a witness, his extrajudicial statement is admissible as a statement against interest if the statement "at the time of its making * * * so far tended to subject him to civil or criminal liability * * * that a reasonable man in his position would not have made the statement unless he believed it to be true." The decision to admit this evidence was based on assertions made by Mr. Fischer during the course of interrogation indicating that he feared losing his job and going to jail.

---

1. When determining the sentence, the court had before it several investigation reports not introduced at trial. One report concerned an investigation made of defendant's collection of birds at his "Animal Acres Zoo" by agents of the U. S. Fish and Wildlife Service. During the investigation, defendant made several threats to the agents, including, "I will shoot any agent who tries to take them [the birds]."

Another report before the court concerned defendant's arrest and conviction of assault following interference with district foresters. De-

fendant had denied access to foresters who were checking out a fire in the area. When the foresters attempted to cross his property, defendant pointed a loaded rifle at them and said that if they did not leave he would use it.

In a third reported incident, defendant became angry when his son was arrested. He shook his fist at a police officer, threatening that if his son was not released, he would return with guns and people would get hurt. He added that "blood will run down this hall" and "you don't have enough men to stop us."

■ We are not convinced that the statement made by Mr. Fischer was admissible as a declaration against interest. The circumstances under which the statement was made do not indicate that the statement was so far contrary to his interest that a reasonable person in his position would not have made the statement unless he believed it to be true.

First, the statement was given after Mr. Fischer had been promised a reduced charge in return for his cooperation. The Advisory Committee's Note on Fed.R.Evid. 804(b)(3), which corresponds to Minn.R.Evid. 804(b)(3), states: "[A] statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest." Following this reasoning, a number of courts have held that statements made under assurances of reduced charges or after a grant of immunity are not statements against a declarant's penal interest. *See, e. g., United States v. Love*, 592 F.2d 1022 (8th Cir. 1979); *United States v. Bailey*, 581 F.2d 341 (3d Cir. 1978); *United States v. Gonzalez*, 559 F.2d 1271 (5th Cir. 1977); *People v. Dortch*, 84 Mich.App. 184, 269 N.W.2d 541 (1978).

In *State v. Black*, 291 N.W.2d 208, 213 (Minn.1980), we held that the witness' statements to police and her testimony at a prior trial were statements against penal interest under 804(b)(3) when they inculpated the defendant as well as the witness. However, we noted that the witness had received no promises from the state or police for her statements and that the statements had, in fact, led to her own conviction. *Id.* Consequently, the fact that Harold Fischer's statement was given to authorities after he had been assured of lenient treatment indicates that his statement was not against his penal interest; rather, as a result of the bargain, it was in his best interest to make the statement.

■ In addition, hearsay statements which consist principally of material exculpating the declarant are suspect absent the presence of solidly inculpating statements. *State v. Anderson*, 284 N.W.2d 360 (Minn. 1979). This is particularly significant when the statement inculpates a defendant.[2] In this case, most of Mr. Fischer's statement indicates that he was not directly involved in the criminal activity. His testimony is replete with exculpatory statements such as: "These guys wanted to shoot at the equipment * * * and [I said] I thought we shouldn't go out." He also stated: "I didn't know what the hell they were going to do * * *." Thus, when viewed in its entirety, his declaration is not predominantly inculpatory. *Cf. State v. Black*, 291 N.W.2d at 213 (statement predominantly inculpatory since it "deeply involve[d]" declarant in the planning of a murder).

■ 2. The trial court admitted the statement of Ardys Fischer pursuant to Minn.R.Evid. 804(b)(5), the residual exception for statements that do not fit within one of the traditional exceptions to the hearsay rule.[3] This statement is of less importance than that of Mr. Fischer for, standing alone, it would not support a conviction. In any event, the declaration does not withstand the careful examination necessary to determine whether it possesses sufficient guarantees of trustworthiness.

2. One commentator has suggested that exclusion should almost always result when a statement against penal interest is offered *against* an accused. 4 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 804(b)(3)[03], at 804–113 (1979).

3. The main conditions for admission under 804(b)(5) are that:
(1) The declarant must be unavailable;
(2) The statement must have circumstantial guarantees of trustworthiness equivalent to the first four exceptions in Rule 804(b);

(3) The statement must be offered as evidence of a material fact;
(4) The statement must be more probative on the point for which it is offered than any other evidence that the proponent reasonably can procure;
(5) Introduction of the statement must serve the interests of justice and the purposes of the Minnesota rules;
(6) The proponent of the evidence to be offered must have given his adversary the notice required by the rule.

Mrs. Fischer was not under oath when she was interviewed, and the interview took place some time after the incident. *See United States v. Fredericks*, 599 F.2d 262 (8th Cir. 1979). Her declaration was made during an investigation by agents of the state in which her statement could not be tested by cross-examination. *See United States v. Bailey*, 581 F.2d at 350. She conceded that she did not pay much attention to the discussion between the men in the kitchen, and her statement indicates that much of what she reported she did not observe firsthand. It is particularly noteworthy that she was, at the time, separated from her husband, and, with the assistance of her attorney, she extracted assurances of her entitlement to the published offer of reward for the information. The available corroborating evidence did not provide a sufficient degree of reliability to justify admission of the declaration. The trial court therefore erred in allowing the introduction of Mrs. Fischer's statement under 804(b)(5).[4]

3. Even if the statements of the Fischers were to be deemed admissible under an exception to the hearsay rule, their admissibility does not survive constitutional challenge. The sixth amendment guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him." We hold that defendant's confrontation right was violated by the admission of the statements, notwithstanding that the Fischers refused to testify at trial. The sixth amendment is made obligatory on the states by the fourteenth amendment. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923 (1965).

We have acknowledged that the right of confrontation is a fundamental right under both state and federal constitutions. *State v. Black*, 291 N.W.2d at 213. The presentation of out-of-court statements can be a violation of this guaranteed right. *Id.* at 213–14; *State v. Gruber*, 264 N.W.2d

812 (Minn.1978). There may be a violation of confrontation imperatives even when the statements in issue are admissible under recognized hearsay exceptions. *California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970); *United States v. Fielding*, 630 F.2d 1357, 1366 (9th Cir. 1980). Consequently, a statement which is admitted under a hearsay exception is still subject to analysis under the confrontation clause.

A two-step analysis is required in each case to determine whether application of the hearsay exception violates the confrontation clause. *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). First, the necessity of the hearsay declaration must be addressed. Second, the reliability of such declarations must be examined. *Id.*

The requirement of necessity is fulfilled by a showing that the declarant is unavailable. *Id.* The Fischers' refusal to testify, on the basis of their fifth amendment privilege, is sufficient to constitute "unavailability" for purposes of the sixth amendment confrontation right. *Phillips v. Wyrick*, 558 F.2d 489, 494 (8th Cir. 1977), *cert. denied*, 434 U.S. 1088, 98 S.Ct. 1283, 55 L.Ed.2d 793 (1978).

A more difficult requirement is demonstrating that the statements bear sufficient "indicia of reliability" to avoid a conflict with the confrontation clause. *See Ohio v. Roberts*, 448 U.S. at 65, 100 S.Ct. at 2539; *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970). Statements which are made under oath and subject to cross-examination may be sufficiently reliable to protect the values associated with the confrontation clause. *See, e. g., Ohio v. Roberts*, 448 U.S. at 70–72, 100 S.Ct. at 2541–42; *California v. Green*, 399 U.S. at 165, 90 S.Ct. at 1938–39. Further, the admission of declarations which are not crucial to a case is less likely to involve a denial of defendant's confrontation right. *See*

---

4. The same reasons that we determined were significant in holding that Mr. Fischer's statement was untrustworthy, and therefore inad-

missible under 804(b)(3), lead us to conclude that his statement is not admissible under 804(b)(5).

*Dutton v. Evans*, 400 U.S. at 87, 91 S.Ct. at 219.

 However, unsworn, *ex parte* statements made during police questioning have traditionally been considered as inherently untrustworthy. *United States v. Sarmiento-Perez*, 633 F.2d 1092, 1102–03 (5th Cir. 1981). Indeed, the purpose of the confrontation clause is to prohibit these *ex parte* declarations from being introduced at trial. *California v. Green*, 399 U.S. at 156, 90 S.Ct. at 1934; *People v. Baker*, 94 Mich. App. 365, 288 N.W.2d 430 (1979). As the United States Supreme Court noted in *Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895):

> The primary object of the [confrontation clause] was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

Because of their unreliability, the admission of such statements may result in a denial of a defendant's constitutional right to confront the witnesses against him. *See State v. Olson*, 291 N.W.2d 203, 206 (Minn.1980).

In *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), the confession of an accomplice of the defendant, who invoked his fifth amendment privilege, was read to the jury. In reviewing the defendant's conviction, the Supreme Court held that the indirect admission of the inculpatory statement was a violation of the right of confrontation. Similarly, in *Brookhart v. Janis*, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1965), and *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Court determined that the convictions of the defendants should be reversed because statements made by codefendants who did not testify at trial were admitted into evidence.

The admission of the statements given by the Fischers obviously invoke defendant's sixth amendment right of confrontation. The statements are the most crucial evidence in this case. They were not made under oath or under circumstances closely approximating those of a typical trial; instead, they were made in the unsupervised setting of an official interrogation. Most significantly, cross-examination of the Fischers was precluded by their refusal to testify.[5] Cf. *Ohio v. Roberts*, 448 U.S. at 67–73, 100 S.Ct. at 2540–42 (confrontation right not violated by admission of preliminary hearing testimony which had been subject to cross-examination); *California v. Green*, 399 U.S. at 165, 90 S.Ct. at 1938–39 (confrontation clause not violated by the admission of preliminary hearing testimony given under oath and subject to cross-examination).

The admission of the Fischers' statements was violative of defendant's right of confrontation unless defendant, by his own actions, intentionally waived or forfeited the right to confrontation. We have held that

---

5. We recognize that the trial court stated that the witnesses could be subject to cross-examination. In *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court noted that: "[w]e need not decide whether * * * the mere opportunity to cross-examine rendered the prior testimony admissible." *Id.* 448 U.S. at 70, 100 S.Ct. at 2541. In *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), it was stated that there must be a "complete and adequate opportunity to cross-examine." *Id.* 380 U.S. at 407, 85 S.Ct. at 1069. In this case, there was no adequate opportunity to cross-examine because the Fischers refused to testify, invoking their fifth amendment privilege. Mr. Fischer was, in fact, incarcerated for contempt during the trial. Any attempt at cross-examination would have been futile. *See United States v. Weiner*, 578 F.2d 757 (9th Cir.), *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978). Consequently, the fact that the trial court stated that the state could cross-examine the Fischers did not satisfy the confrontation right since such confrontation would have proven fruitless. *See Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) (witness' refusal to testify denied defendant right of cross-examination).

a defendant who procures the absence of a witness by threats impliedly waives his right to confrontation. *State v. Black*, 291 N.W.2d 208 (Minn.1980); *State v. Olson*, 291 N.W.2d 203 (Minn.1980). *See also United States v. Carlson*, 547 F.2d 1346 (8th Cir. 1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977).

The trial court, in determining that defendant had waived his right of confrontation, relied on *United States v. Carlson*, 547 F.2d 1346 (8th Cir. 1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977), since the trial antedated our decisions in *State v. Black*, 291 N.W. 208 (Minn. 1980), and *State v. Olson*, 291 N.W.2d 203 (Minn.1980). In *Carlson*, a witness had testified at a grand jury hearing but refused to testify at trial because, as he clearly intimated to agents, he had received threats from defendant.[6] The Court of Appeals determined that defendant had waived his confrontation right by his own inimical action in threatening the life of a codefendant. *Id.* at 1358–60.

In *United States v. Balano*, 618 F.2d 624 (10th Cir. 1979), *cert. denied*, 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980), the witness, who refused to testify at trial, stated that his previous grand jury testimony was truthful. An agent testified that after the grand jury investigation, the witness had mentioned that an employee at his uncle's bar had received a phone call stating that if anybody testified in the matter they could be killed. Also, the defendant had come into another bar in which the witness was working and said that somebody could get killed if any statement was made about the case. Consequently, the court concluded that the evidence showed that the defendant had waived his confrontation right by his conduct.

In the companion cases of *State v. Olson*, 291 N.W.2d 203 (Minn.1980), and *State v. Black*, 291 N.W.2d 208 (Minn.1980), this court examined statements given by an accomplice to murder at the time of her arrest and at her own trial which were introduced at the defendant's trial when the accomplice refused to testify. The accomplice stated that she would not testify because she feared that she or her child would be harmed. The defendant had, prior to the time of the murder, repeatedly threatened her to induce her to effectuate his plan. He had sent a man, who had beat her, to her apartment and told her to follow defendant's orders. In addition, the woman that the defendant planned to murder was, like the accomplice, a potential witness, and his motive in killing her was to prevent her from testifying against him. In light of these circumstances, we concluded the defendant had forfeited his confrontation right despite the fact that there was no evidence specifically showing that the defendant had made threats to the accomplice between the time of the grand jury testimony and the time of trial.

Despite superficial similarity to the foregoing cases in which defendant's right of confrontation has been deemed forfeited, there is in this case an inescapable and critical evidentiary difference. The evidence, unlike that in *Black* and *Olson*, does not show that defendant at any time threatened either witness or that defendant or a coconspirator had killed or intimidated any other informants. In contrast to *Balano*, there is no proof of general threats to any witness who testified at trial. Instead of implying that he had been threatened, as the witness intimated in *Carlson*, Mr. Fischer, when asked if he had been threatened, replied only, "I don't want to talk about it." Mrs. Fischer and her counsel both denied

---

6. Tindall, the witness in *Carlson*, stated that: "[I]f I don't testify at trial at least I'll have a chance. If I do, it will be all over for me." When Tindall continued to evade any questions as to the source of the threats, Agent O'Connor inquired: "Do you realize that in refusing to discuss this particular topic with me you are in essence confirming the fact that you received threats from Carlson?" Tindall responded: "I

know. You have got the message." Further, in a conversation with Agent Nelson, Tindall said he did not want to discuss the reason for his not testifying. In response to Nelson's inquiry as to whether Tindall thought that Carlson would kill him if he were to testify, Tindall stated that "he did not want to have to find out." 547 F.2d at 1352–53.

that she had received any threats from defendant. When questioned by the court whether she had any basis for refusing to answer other than the fact that she just did not want to answer, Mrs. Fischer said, "No."

■ While the Fischers may have feared that they would be harmed if they testified, there is no evidence that defendant, or anyone acting on his behalf, had intimidated the witnesses by general or specific threats of reprisal.[7] To find a waiver based on a witness' reluctance to testify, absent any evidence of threats attributable to defendant, would destroy the right of confrontation in nearly all cases of alleged crimes against persons. *See United States v. Benfield*, 593 F.2d 815 (8th Cir. 1979). Since the state did not show that there was any direct or indirect evidence indicating that defendant's conduct had caused the Fischers' silence, we are compelled to conclude that the trial court erred in determining that defendant had waived his constitutionally guaranteed right of confrontation.[8]

■ The admission of the statements of the Fischers cannot be considered harmless error. Evidence admitted in violation of the confrontation clause is not harmless error unless the evidence in other respects is overwhelming. *State v. Olson*, 291 N.W.2d at 206; *State v. Shotley*, 305 Minn. 384, 233 N.W.2d 755 (1975). We observed in *State v. Shotley* that:

> Given the expressions of the United States Supreme Court on the subject and the aversion of this court to dilution of the defendant's right to be confronted by witnesses against him, we could not and would not affirm this conviction were it not for the fact that we consider the testimony as a whole to be overwhelmingly persuasive of defendant's guilt. * * * The use of testimony of an absent witness * * * jeopardizes the fairness of the trial and may result in a reversal in any case where such testimony is used, unless the evidence of guilt is so strong as to convince us that the [testimony] * * * did not affect the outcome of the case. For this reason, as a matter of policy, the use of such testimony as substantive evidence should be avoided.

*Id.* at 387, 233 N.W.2d at 758.

The evidence of guilt in this case, absent the statements of the Fischers, is neither strong nor overwhelming. The statements were the only significant evidence offered by the state. Since the declarations were crucial to this case, their admission was not harmless error beyond a reasonable doubt.

The conviction, having been based upon inadmissible evidence, must be reversed and a new trial granted.

Reversed.

YETKA, Justice (dissenting).

It seems clear to me that the Fischers refused to testify only because they were intimidated by defendant. There was no lack of an opportunity for confrontation because there is no doubt that if defendant

---

7. As we observed in note 1, *supra*, the trial court at the post-trial time of sentencing had information concerning serious threats made by defendant to other persons in unrelated contexts. However, there is no evidence of record that the Fischers had knowledge of such incidents. Even if it could be inferred that defendant had a reputation for violence known to Fischer, it would fall far short of proving a threat against the Fischers in this case.

8. In addition to concluding that defendant had waived his right of confrontation with regard to Ardys Fischer's statement, the trial court also stated that defendant had chosen not to call Mrs. Fischer for cross-examination. As we have stated, *see* note 5, *supra*, Mrs. Fischer's refusal to testify prevented an adequate opportunity for cross-examination. *See Mayes v. Sowders*, 621 F.2d 850, 856 (6th Cir.), *cert. denied*, 449 U.S. 922, 101 S.Ct. 324, 66 L.Ed.2d 151 (1980). "The law does not require the doing of a futile act." *Ohio v. Roberts*, 448 U.S. at 74, 100 S.Ct. at 2543. Thus, when Mrs. Fischer refused to testify, despite a grant of immunity and a subsequent civil contempt order, defendant was not obligated to call her to the stand to demonstrate her unavailability, since it had already been established by the prosecution. *Cf. United States v. Weiner*, 578 F.2d at 771 (failure of prosecution to call witness did not constitute grounds for reversal when defense had called him and he had asserted his fifth amendment right against self-incrimination).

had called the Fischers, they would have testified. Thus, defendant should not be permitted to invoke the Sixth Amendment where he himself is responsible for the failure of the court to have available personal testimony of the Fischers. I see no distinction between this case and the cases of *State v. Olson* and *State v. Black* cited in the majority opinion. I would affirm the conviction.