**STATE of Minnesota, Respondent,**

v.

**James Dwight STALLINGS, Appellant.**

**No. C6–91–127.**

Court of Appeals of Minnesota.

Aug. 27, 1991.

Review Granted Oct. 11, 1991.

Hubert H. Humphrey, III, Atty. Gen., Thomas J. Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

Steven P. Russett, Asst. Public Defender, St. Paul, for appellant.

Considered and decided by KLAPHAKE, P.J., and LANSING and DAVIES, JJ.

OPINION

KLAPHAKE, Judge.

James Stallings challenges his conviction of second and third degree assault, Minn. Stat. §§ 609.222, 609.223 (Supp.1989), claiming the trial court's ruling allowing the state to impeach Stallings with prior convictions was an abuse of discretion. Stallings also argues the trial court's evidentiary rulings deprived him of his right to constitutional confrontation and right to a fair trial. We affirm in part, reverse in part, and remand for a new trial.

FACTS

On June 30, 1990, Darren Stigger and Tyron Riley met appellant James Stallings at a birthday party for Malinda Hutchinson's one-year-old son. Stallings, who had dated Hutchinson, argued with Stigger during the party.

As Stigger and Riley left the apartment, Hutchinson and Stallings began to argue. Several hours later, Hutchinson's twelve-year-old cousin, Kenneth Hutchinson, knocked at Stigger's door and asked Stigger and Riley for assistance because Stallings was beating Hutchinson. They returned to Hutchinson's apartment, but Stallings was gone. During the night they stayed with Hutchinson, answering Stallings' phone calls and refusing to let him into the apartment. Riley left about 6 a.m. Kenneth Hutchinson fell asleep on the living room couch and Hutchinson and Stigger went to sleep in the bedroom.

At 6:48 a.m. police officer Steven Smith responded to a call at Hutchinson's apartment. Officer Smith filled out a report, based upon the statement Hutchinson made to him immediately upon his arrival, approximately five minutes after Stallings allegedly assaulted Stigger:

Hutchinson states that Stigger and her were lying on the bed when Stallings * * * and Odell "OD" * * * entered Apt # 1220. Stallings jumped on top of Stigger and struck him several times with a hammer. Hutchinson attempted to stop Stallings, then Stallings struck her with

his fist on the right side of face and both arms. She then got out of bed, and attempted to leave the bedroom. But Odell stood in her way and wouldn't let her out.

Stallings stated "I told you nigger (Stigger) I was going to kill you." "You bitch your gonna get yours too." "Bitch you better not call the Police."

Stallings and Odell then fled on foot. Hutchinson, Kenneth Maurice * * * was asleep in the living room but heard nor saw anything.

Kenneth Hutchinson told Officer Smith he was asleep during the attack. Stigger, who sustained severe head injuries, was unable to recall the attack.

After Stallings was arrested and charged, the court held a *Florence* hearing to determine probable cause. Kenneth Hutchinson testified that he awoke when Stallings broke into the apartment with two other men known as O.D. and Fast Eddie. After Stallings and Hutchinson argued, O.D. and Fast Eddie stood in the bedroom doorway while Stallings entered the bedroom with a hammer. Kenneth then heard Hutchinson yell "No" or "Stop Jay."

Hutchinson, however, recanted her earlier statement. She testified that O.D. assaulted Stigger while she and Stallings argued in the hallway and that Fast Eddie was not present. She stated she saw Stallings pull O.D. off Stigger. She denied being afraid of Stallings and recanted allegations that Stallings had threatened her family. She claimed she lied in her earlier statement because she was angry that Stallings had left her and begun a relationship with another woman.

Neither Hutchinson nor O.D. appeared for trial. The trial court allowed Officer Smith to testify about Hutchinson's statement at the scene under the excited utterance exception to the hearsay rule. Holding the *Florence* testimony did not bear sufficient indicia of reliability, the trial court refused to admit Hutchinson's *Florence* testimony. The trial court also ruled that if Stallings testified, the state could impeach his credibility with prior convic-

tions for attempted burglary, burglary, theft, possession of an assault weapon, and perjury. Stallings did not testify, and the defense rested at the close of state's evidence.

During deliberations, the jury asked to hear Officer Smith's testimony again. The trial court allowed Officer Smith's entire testimony read to the jury in the presence of counsel. The jury convicted Stallings of second and third degree assault. The trial court denied Stallings' motion for a new trial and sentenced him to the presumptive 68–month term.

## ISSUES

1. Did the trial court abuse its discretion by ruling the state could introduce evidence of Stallings' prior convictions?

2. Did the trial court violate Stallings' right to confrontation by admitting Hutchinson's hearsay statement as an excited utterance?

3. Did the trial court violate Stallings' due process rights by refusing to admit *Florence* testimony after it admitted her other hearsay statement as an excited utterance?

## ANALYSIS

1. Prior convictions.

■ Stallings first challenges the trial court's decision to allow numerous prior convictions to impeach his credibility. The court's decision on this issue will be reversed only for an abuse of discretion. *State v. Jones,* 271 N.W.2d 534, 537 (Minn. 1978).

■ The state may impeach a witness' credibility with evidence of prior convictions if:

1. The crime was punishable by death or imprisonment in excess of one year * * * and the court determines that the probative value of admitting the evidence outweighs its prejudicial effect; or

2. The crime involved dishonesty or false statements regardless of the punishment.

Minn.R.Evid. 609(a). Stallings does not dispute the admissibility of the 1983 perjury conviction but he does contend the prejudicial effect of the other convictions outweighs their probative effect under rule 609(a)(1).

Between 1980 and 1987, Stallings was convicted of two felony thefts, one attempted burglary, three burglaries, and one attempted possession of a pistol by a felon. The probative value of these prior convictions must be weighed against their prejudicial effect in light of the following factors:

1) the impeachment value of the prior crimes,

2) the date of the conviction and the defendant's subsequent history,

3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach),

4) the importance of defendant's testimony, and

5) the centrality of the credibility issue.

*Jones,* 271 N.W.2d at 538.

Applying the *Jones* factors, we conclude the trial court properly ruled that the prior convictions could be used to impeach Stallings' credibility if he testified. The theft, burglary, and arms possession convictions have impeachment value because they show Stallings as a whole person. *See St. Paul v. DiBucci,* 304 Minn. 97, 100, 229 N.W.2d 507, 508 (1975). Although the convictions do not necessarily involve veracity, they are probative of credibility. *Id.* None of the convictions are stale. *See* Minn.R.Evid. 609(b); *Jones,* 271 N.W.2d at 538. Nor do the convictions involve assault; thus, the prejudicial effect of a past similar crime is not at issue.

■ A prior conviction may be excluded where the trial court determines that its admission for impeachment purposes will cause the defendant not to testify and that it is more important that the jury hear the defendant's version of the facts. *State v. Bettin,* 295 N.W.2d 542, 546 (Minn.1980). However, where the defendant's credibility is central, the need for impeachment evi-

dence is greater. *Id.* Here, Stallings' credibility would be crucial if he testified. Thus, this factor also supports admission of the convictions. The trial court's ruling was not an abuse of discretion.

2. Confrontation Clause.

■ Stallings next argues the admission of Hutchinson's statement to Officer Smith violated his right of confrontation. Admission of hearsay statements pursuant to a recognized exception may violate the accused's fundamental right to confront witnesses. *State v. Hansen,* 312 N.W.2d 96, 102 (Minn.1981). Minnesota has adopted the U.S. Supreme Court's two-part analysis considering the necessity of the hearsay declaration and the reliability of the declaration to determine whether application of the hearsay exception violates the confrontation clause. *Id.*

■ Hutchinson's hearsay statement was necessary because she was unavailable. *See id.* Sufficient indicia of reliability may be "inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). The excited utterance is a firmly rooted hearsay exception. *State v. Daniels,* 380 N.W.2d 777, 785–86 (Minn.1986).

■ To be admissible as an excited utterance, the statement must follow a startling event and relate to that event, and the declarant must be under a sufficient aura of excitement from the event to ensure the statement's trustworthiness. *Daniels,* 380 N.W.2d at 782 (quoting Minn.R.Evid. 803(2) Advisory Committee comment (1977)). The violent assault qualifies as a startling event, and Hutchinson's statements, made within five or six minutes of the assault, relate to the assault. Hutchinson acted nervous and anxious when she made the statement. These facts show Hutchinson was under an aura of excitement when she made the statement to Officer Smith.

Stallings characterizes Hutchinson's statement as an unsworn ex parte statement given in response to police question-

ing. We disagree. Such ex parte statements are generally considered untrustworthy. *Hansen,* 312 N.W.2d at 103. While Hutchinson's statement was made in response to Officer Smith's questions, the circumstances indicate that the statement was an excited utterance. *See State v. Berry,* 309 N.W.2d 777, 783 (Minn.1981) (statements made in response to police questioning while declarant still under stress of excitement one hour after event admissible as excited utterances).

■ Stallings also argues that Hutchinson's *Florence* testimony, in which she recanted her excited utterance, negated any indicia of reliability surrounding the excited utterance. Again, we disagree. An excited utterance is reliable because "the excitement caused by the event eliminates the possibility of conscious fabrication." Minn. R.Evid. 803(2) Advisory Committee comment (1977), *quoted in Daniels,* 380 N.W.2d at 782. Hutchinson's *Florence* testimony does not negate the presumed reliability of the excited utterance. We conclude admission of Hutchinson's excited utterance did not violate Stallings' right to confrontation.

### 3. *Florence* testimony.

■ Stallings argues exclusion of Hutchinson's *Florence* testimony deprived him of his due process right to a fair trial and was admissible under the residual exception of the hearsay rule. We agree.

Where a declarant is unavailable to testify, a hearsay statement not falling within any other exception may be admitted if the statement has "equivalent circumstantial guarantees of trustworthiness." Minn. R.Evid. 804(a), (b)(5). The trial court must also determine whether:

(A) the statement is offered as evidence of a material fact;

(B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Minn.R.Evid. 804(b)(5).

Hutchinson's *Florence* testimony was offered to show the identity of Stigger's assailant, a fact material to the case. The *Florence* testimony is equally as probative of identity as the excited utterance.

Additionally, Hutchinson's *Florence* testimony was given under oath and was subject to cross-examination. While we recognize the discretion afforded the trial court on evidentiary questions, we believe sworn testimony that is subject to cross-examination bears sufficient indicia of reliability to be admitted in this case. *See State v. Blasus,* 445 N.W.2d 535, 541 (Minn.1989) (statements under oath and subject to cross-examination sufficiently reliable under rule 804(b)(5), unlike an unsworn ex parte statement to police). Admission of the *Florence* testimony will not frustrate the general purpose of the hearsay exclusion, which is to prevent the jury from hearing statements which lack "conventional indicia of reliability." *Chambers v. Mississippi,* 410 U.S. 284, 298, 93 S.Ct. 1038, 1047, 35 L.Ed.2d 297 (1973).

Finally, due process concerns require admitting the *Florence* testimony. Here, Hutchinson's first statement was properly admitted as an exception to the hearsay rule, but the *Florence* testimony was excluded. Arguably, the *Florence* testimony might be more reliable than the first statement because it was made under oath and subject to cross-examination. Additionally, had Hutchinson testified, the *Florence* testimony could have been used for impeachment purposes under Minn.R.Evid. 613. The trial court's ruling prevented the jury from considering historically reliable information on identity, and from knowing that Hutchinson had recanted. While the trial court may have believed Hutchinson was pressured into recanting, she specifically denied that any outside influences caused her to change her story. Because the issue of identity was based entirely on admissible hearsay, we believe due process requires the admission of a sworn, cross-examined recantation as well. *See Brady v. Mary-*

*land,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963) (defendant's due process rights violated when material exculpatory evidence not admitted); *State v. Brechon,* 352 N.W.2d 745, 751 (Minn.1984) (defendants have fundamental due process right to explain their conduct to jury). The differing versions of the morning's events are best resolved by a jury.

## DECISION

Affirmed in part, reversed in part, and remanded.

LANSING, Judge (dissenting in part).

Determining whether an exception to the hearsay rule is established is largely within the sound discretion of the trial court. *Hase v. Am. Guar. & Liab. Ins. Co.,* 312 Minn. 271, 251 N.W.2d 638, 641 (1977). This is especially true when the hearsay is offered under Minn.R.Evid. 803(24) or 804(b)(5) because the statement's admissibility is dependent upon its "guarantees of trustworthiness."

Although Hutchinson's *Florence* testimony was given under oath and subject to cross-examination, those are but two factors which the trial court may consider in determining trustworthiness. *See, e.g., State v. Blasus,* 445 N.W.2d 535, 541 (Minn.1989) citing *State v. Hansen,* 312 N.W.2d 96, 102–03 (Minn.1981). The factors indicating unreliability are substantial: Hutchinson's refusal to appear in court to testify; the lack of corroboration for Hutchinson's *Florence* testimony; the existence of corroboration for Hutchinson's original police statements; Hutchinson's facially inconsistent explanations for the change in her testimony; the amount of time between the assault and Hutchinson's police statement as compared to the amount of time between the assault and the *Florence* hearing; Hutchinson's previous relationship with Stallings; and indications that Hutchinson's *Florence* testimony may have been coerced. The record supports the trial court's determination to ex-

clude the *Florence* testimony as untrustworthy and the ruling should be affirmed.