**STATE of Minnesota, Respondent,**

v.

**Tyrone Dion PATRICK, Appellant.**

**No. C1–93–976.**

Court of Appeals of Minnesota.

March 1, 1994.

Review Denied April 19, 1994.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., William T. Richardson, Asst. County Atty., Minneapolis, for respondent.

Frederick J. Goetz, Minneapolis, for appellant.

Considered and decided by HARTEN, P.J., and KLAPHAKE and PETERSON, JJ.

## OPINION

KLAPHAKE, Judge.

Tyrone D. Patrick appeals his conviction of second degree murder, Minn.Stat. § 609.-19(1) (1992), contending the trial court's admission of a witness's testimony from a separate trial violated his constitutional right to confront witnesses against him and that the court abused its discretion by admitting other evidence. We reverse and remand.

## FACTS

On the afternoon of August 18, 1992, Free A. Benton was shot three times during a drive-by shooting. The shots were fired from the passenger window of a Ford Bronco II driven by appellant Tyrone D. Patrick. James E. Phillips sat in the front passenger seat. When the two men abandoned the Bronco II after a police chase, police discovered four weapons in the vehicle including the murder weapon, a nine millimeter assault weapon, which was found on the passenger side.

At their separate trials, both Patrick and Phillips were tried on charges of second degree murder. Each man claimed that the other was "the shooter" and that he had no knowledge that the other intended to shoot Benton. The men agreed that the shooting occurred while they were enroute to a shooting range for target practice.

At Phillips' trial, London Amos, a woman whom Patrick had recently begun dating, gave incriminating testimony against Patrick. She testified that Patrick admitted killing Benton, that she had seen the murder weapon at Patrick's apartment on the morning of the murder, and that he had told her his motive for the murder. She denied knowing Phillips, although testimony of many other witnesses showed they knew each other.

Phillips gave three contradictory statements to police regarding his actions on August 18. He testified at Patrick's trial, however, that he did not know Patrick and that they rode together in the Bronco II merely because Patrick offered him a ride.

Patrick testified that the two were casual but not close friends. Patrick stated that while they drove through the neighborhood where the shooting occurred, Phillips suddenly indicated that someone he disliked lived in the neighborhood. When he spotted Benton, Phillips said, "That's the nigger right there" and suddenly shot Benton. Also according to Patrick, Phillips had told him earlier that Benton had shot Phillips in the head and had stolen property from him. Patrick testified that he did not know Benton. Patrick explained that he drove quickly out of the neighborhood only because Phillips threatened him with a gun and ordered him to "drive," and that he ran from the police because he feared they would kill him.

Amos was not a witness at Patrick's trial. Over Patrick's objection, her testimony from Phillips' trial was read into evidence. Phillips was acquitted, but Patrick was convicted and now appeals.

## ISSUE

Did the admission of London Amos's testimony deprive Tyrone Patrick of his constitutional right to confront witnesses against him?

## ANALYSIS

■ Patrick contends that by reading into evidence at his trial the previous testimony of London Amos from Phillips' trial, the state violated his constitutional right to confront witnesses against him under both the federal and state constitutions. *See* U.S. Const. Amend. VI; Minn. Const. art. I, § 6. Both constitutions apply a two-part test to determine whether evidence admitted at trial violates a defendant's right of confrontation:

> [W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980) (footnote omitted); *see Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638 (1990); *State v. Hansen,* 312 N.W.2d 96, 102 (Minn.1981) (Minnesota adopts federal test).

The parties dispute whether Amos was unavailable for Patrick's trial. In an affidavit filed February 19, 1993, an assistant county attorney stated that three times he unsuccessfully attempted to serve a subpoena on Amos to appear at Patrick's *grand jury hearing.* Additionally, the affidavit reveals that

in January 1993 the officers responsible for serving Amos were told that she would be out of town until February. The assistant county attorney's affidavit also stated that an investigator would again attempt to serve a subpoena directing Amos to appear at Patrick's trial, but no return of service or other evidence of such an attempt is contained in the record.

At Patrick's trial, Minneapolis Police Officer Richard Edinger testified that he served Amos with a subpoena, but Edinger did not specify whether the subpoena was for the grand jury hearing or Patrick's trial. Edinger also testified that on February 22, 1993, *the date that Patrick's trial was scheduled to begin,* he spoke to a woman identifying herself as London Amos. After the telephone caller stated that she would not appear for the trial, Edinger went to the home where he believed her to be, but no one answered the door. Edinger did not testify whether he brought a subpoena for trial with him.

Based on this evidence, we conclude the state did not establish that Amos was unavailable for the purposes of Confrontation Clause analysis. Although Amos was served with a subpoena to appear at Patrick's *grand jury hearing,* it is not clear that the state served or attempted to serve Amos with a subpoena for Patrick's *trial.* The record contains no return of service on a subpoena requiring Amos to appear for Patrick's trial. The only indication of additional contact with Amos is Edinger's testimony that, *on the date of trial,* he spoke to someone identifying herself as Amos. Furthermore, the trial court made no finding that Amos was unavailable for Patrick's trial.

■ This record does not establish that the state made a good-faith effort to obtain Amos as a witness at Patrick's trial. *See Barber v. Page,* 390 U.S. 719, 724–25, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968) (where witness was absent from jurisdiction but state did not attempt to obtain witness's presence through at least two alternative methods, state did not make good-faith effort to obtain witness for trial); *cf. Mancusi v. Stubbs,* 408 U.S. 204, 212, 92 S.Ct. 2308, 2312, 33 L.Ed.2d 293 (1972) (where state unsuccessfully attempted to serve subpoena at wit-

ness's last known address and presented testimony of witness's son that witness had moved to Sweden, state made good-faith effort to obtain witness for trial); *see also State v. Schilling,* 474 N.W.2d 203, 205 (Minn.App.1991). Therefore, admission of Amos's testimony at Patrick's trial violated the Sixth Amendment and article I, section 6 of the Minnesota Constitution. *See Barber,* 390 U.S. at 725, 88 S.Ct. at 1322; *Hansen,* 312 N.W.2d at 105.

■ Although admission of Amos's testimony violates the Confrontation Clause, it is subject to harmless error analysis. *See Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986); *State v. Olson,* 291 N.W.2d 203, 206 (Minn. 1980). Under this standard, a conviction will not be reversed for a constitutional error if the state shows "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967); *see also Schilling,* 474 N.W.2d at 205 (remaining evidence must be overwhelmingly persuasive of guilt). Review under the harmless error standard inquires

not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.

*Sullivan v. Louisiana,* —— U.S. ——, ——, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993) (emphasis in original).

Here, Amos's testimony strongly linked Patrick to the crime. Only Amos testified that Patrick admitted to killing Benton, established a motive for him to kill Benton and placed the murder weapon in his possession prior to the crime. Although there is other evidence from which the jury could have convicted Patrick, we cannot conclude that the guilty verdict was "surely unattributable to the error," nor may we conclude that the remaining evidence was overwhelmingly persuasive of Patrick's guilt.

Patrick further contends the trial court abused its discretion by admitting evidence of his purchase of the Bronco II for cash and

of his having a police scanner and a book entitled *What Police Know.* Because we remand for a new trial, we decline to address this issue.

## DECISION

The trial court erred in admitting testimony of a witness from another trial where that witness was not shown to be unavailable and where we cannot conclude the verdict was not attributable to the error.

**Reversed and remanded.**