## STATE v. GARY R. HIGGINBOTHAM.

212 N. W. 2d 881.

November 16, 1973—No. 43833.

*David P. Murrin,* Legal Rights Center, Inc., for appellant.

*Warren Spannaus,* Attorney General, *George M. Scott,* County Attorney, and *Vernon E. Bergstrom, Michael McGlennen,* and *Theodore R. Rix,* Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Kelly, JJ.

ROGOSHESKE, JUSTICE.

Defendant, Gary Higginbotham, appeals from a second-degree murder conviction. Because we hold inadmissible a declaration against penal interest which is not proven trustworthy by independent evidence, and because the United States Supreme Court has held that the Sixth Amendment does not grant the right to have counsel present at a postindictment photographic identification, we affirm the conviction.

The killing occurred as a result of a racial slur uttered by the deceased, Richard Bushey. On the night of the homicide, Bushey and a few friends were standing in the street near the apartment of one Joyce Tiedens, an unmarried, white woman who was the mother of a mulatto child. When Miss Tiedens walked past Bushey and his friends, Bushey called her a "nigger lover." The woman went upstairs to her apartment without incident but a few moments later, defendant and a friend, Ronald O'Neal, both blacks, descended from the same apartment. Robert Yunker, a friend of Bushey, testified that defendant carried a gun in the waistband of his pants. The jury could find that, after drawing and pointing the gun at Yunker, defendant requested the identity of the person who made the "smart remark about the girl." Bushey replied that he had made the remark and added, "What about it?" After a brief exchange of words, Bushey, who had been drinking most of the night, took a swing at defendant but missed. Defendant responded by hitting Bushey alongside the head with the pistol. After Bushey took another swing at him, defendant stepped back and fatally shot the victim three times.

The evidence as a whole overwhelmingly identified defendant as the one who fired the fatal shots. At trial, eyewitnesses Yunker and Richard Hommes positively identified defendant as the one who did the shooting. All of the trial testimony, except for that offered by defendant, established that Bushey had been

killed by a black man wearing a dark, leather-fringed vest and that defendant had worn such a vest at the time of the shooting.

Defendant offered a completely different version of what had occurred. He testified that he had become incensed at the remarks of the victim but had walked away from the scene before the shooting began. Despite compelling evidence to the contrary, defendant denied having worn such a vest and denied ever switching his outer garments with O'Neal after the shooting.

A written confession by O'Neal, which defendant claims was erroneously held inadmissible, declared that he, rather than defendant, shot the victim. In his confession, O'Neal also stated that he, and not defendant, wore the dark leather vest on the night of the homicide.

The overwhelming evidence, which includes eyewitness testimony, clearly supports the jury's guilty verdict. While O'Neal was in fact wearing the dark leather vest when he was picked up by the police, from the abundance of eyewitness testimony that defendant was wearing the leather vest at the time of the shooting the jury surely was permitted to conclude that O'Neal changed into defendant's vest after the shooting.

Five days after the shooting, O'Neal entered the Minneapolis Police Department and volunteered a confession regarding the Bushey shooting. After being informed of and waiving his Fifth and Sixth Amendment rights, O'Neal confessed to the killing and signed a written confession. A few minutes later he slumped to the floor, started crying, and declared that he had been on LSD all day. On the basis of the testimony received at defendant's trial which absolved O'Neal from any wrongdoing, the prosecution dismissed all charges against O'Neal despite the existence of this "confession." At defendant's trial, however, the defense attempted to offer O'Neal's confession as evidence tending to exculpate defendant. The trial judge refused to admit the confession, reasoning that to allow such a confession would amount to a "fraud on the public." Defendant contends this refusal to admit the exculpatory confession was prejudicial error.

Since O'Neal alleged in his confession that he, rather than defendant, shot the victim, and since O'Neal made himself unavailable to testify at trial by claiming his Fifth Amendment privilege, defendant argues that such a confession constitutes a declaration against the penal interest of the declarant and thus should be admitted as an exception to the hearsay rule.

■ Generally, declarations against penal interest have not been regarded as a valid exception to the hearsay rule. See, e.g., 5 Wigmore, Evidence (3 ed.) § 1476, p. 283, note 9; McCormick, Evidence, § 255; Donnelly v. United States, 228 U. S. 243, 272, 33 S. Ct. 449, 459, 57 L. ed. 820, 832 (1913). However, outright rejection of such declarations against penal interest as being without probative value has undergone severe criticism,[1] and the modern trend favors admissibility with certain qualifications.[2] We are inclined to agree but would place some threshold limitations on admissibility. In essence, we are in accord with Rule 804(b)(3) of the Federal Rules of Evidence as proposed in July 1973 by the Subcommittee on Criminal Justice of the House Judiciary Committee in requiring that "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." (Italics omitted.) Such a position requires more proof

---

[1] See, e.g., Subcommittee on Criminal Justice of the House Judiciary Committee, Federal Rules of Evidence, p. 11 (Proposed Draft, July 1973); Committee on Rules of Practice and Procedure, Proposed Rules of Evidence for the United States Courts and Magistrates, p. 129 (Rev. Draft, March 1971); 5 Wigmore, Evidence (3 ed.) § 1477, p. 288; Wright, *Uniform Rules and Hearsay,* 26 U. of Cin. L. Rev. 575.

[2] See, e.g., Subcommittee on Criminal Justice of the House Judiciary Committee, *supra* footnote 1; Committee on Rules of Practice and Procedure, *supra* footnote 1; Chambers v. Mississippi, 410 U. S. 284, 93 S. Ct. 1038, 35 L. ed. 2d 297 (1973); In re Estate of Forsythe, 221 Minn. 303, 312, note 4, 22 N. W. 2d 19, 25, note 3 (1946); Hartford Fire Ins. Co. v. Wagner, 296 Minn. 510, 207 N. W. 2d 354 (1973).

than the mere fact that another person has confessed to the same crime for which the defendant stands charged.

As with all exceptions to the hearsay exclusionary rule, a threshold test must be applied to determine the essential trustworthiness and credibility of the statement. Because hearsay statements tending to exculpate the accused must be regarded with suspicion, we hold that, to be admissible, declarations against penal interest must be proven trustworthy by independent corroborating evidence that bespeaks reliability.

Applying the test to the present case, it is apparent that O'Neal's confession is not corroborated by independent evidence which tends to support its reliability. At the outset, the weakness of the confession itself should be noted: The evidence shows that the confession was taken at 2:30 a. m.; that O'Neal went limp after the confession, broke down and cried, and declared he was on LSD when he signed the confession; that he later entered a plea of not guilty to the indictment; and thereafter he asserted his Fifth Amendment rights at defendant's trial. Such a series of events indicates that O'Neal, in effect, repudiated his confession. In addition, except for the testimony of defendant, the eyewitness evidence totally discredits the trustworthiness of O'Neal's confession.

It is also likely that O'Neal, who lived with defendant's family and was often referred to as defendant's brother, fabricated a false confession out of a desire to free his close friend. In a similar case, Brown v. State, 99 Miss. 719, 55 So. 961 (1911), the Mississippi Supreme Court refused to admit a declaration against penal interest because it believed that the declarant was motivated by a desire to free his brother rather than a compulsion to admit guilt. Although the issue was only summarily discussed in Chambers v. Mississippi, 410 U. S. 284, 93 S. Ct. 1038, 35 L. ed. 2d 297 (1973), the United States Supreme Court seemed to acknowledge the propriety of such a refusal when a basis for doubting the trustworthiness of such statements exists. To admit O'Neal's exculpatory statement at defendant's trial would be to

admit demonstrably incredible hearsay and would constitute, as the trial judge concluded, a "fraud on the public."

■ About a week or so before defendant's trial, eyewitnesses Yunker and Hommes gave statements to the police as to what had occurred on the night of the killing. At that time, both were shown eight photographs and asked to point out the murderer. The record reveals that tape had covered the identification information, permitting a view of the faces only. Yunker was able to identify defendant from the photos; Hommes, however, was unable to do so, although he was able to identify defendant in court. At no time was defense counsel notified of the postindictment photographic identification nor was counsel present when the identification took place. Defendant raises this denial of counsel as his second ground of appeal.

The disagreement of appellate courts concerning this issue was recently set at rest in United States v. Ash, 413 U. S. 300, 93 S. Ct. 2568, 37 L. ed. 2d 619 (1973), where it was held that the Sixth Amendment, which guarantees the accused the right "to have the assistance of counsel for his defense," does not grant a person who has been indicted the right to have counsel present at photographic displays which contain a picture of the accused and which are conducted for the purpose of having prosecution witnesses attempt to identify the offender, since such postindictment identification is not a "critical stage" of the adversary process.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.