**STATE of Minnesota, Respondent,**

v.

**Donna RENIER, Appellant.**

**No. CO–83–1020.**

Supreme Court of Minnesota.

Aug. 23, 1985.

C. Paul Jones, Minnesota State Public Defender, Mary C. Cade, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, Alan Mitchell, St. Louis Co. Atty., John E. DeSanto, Asst. Co. Atty., Duluth, for respondent.

KELLEY, Justice,

Following her conviction of first degree murder of her husband, appellant Donna Jean Renier petitioned the trial court for postconviction relief and for a new trial. The trial court denied the motion. Appellant claims that she is entitled to a new trial since her sister gave a post-trial statement exculpating appellant; a deceased potential witness's hearsay statement tended to exonerate her; and because the prosecution failed to furnish to appellant's counsel possible exculpatory evidence.[1] We affirm.

---

1. At appellant's trial the principal witness for the state was Todd Olson, who had pleaded guilty to murder in the second degree for the killing of appellant's husband. At the postconviction hearing appellant offered in evidence an affidavit of Ann Remington setting forth her recollection of a conversation she had overheard between Olson and appellant's counsel. In some minor respects this affidavit contradicted Olson's trial testimony. The trial court excluded this affidavit as being hearsay. Respondent now concedes that the affidavit should not have been excluded as inadmissible hearsay. However, we conclude, under any newly discovered evidence standard, exclusion of the affidavit does not warrant the granting of a new trial. Olson's testimony under oath before the grand jury, at trial and at the postconviction hearing

On April 4, 1982, Todd Olson killed appellant's husband, Steven Renier. At appellant's trial, Todd Olson testified that appellant asked and encouraged him to kill her husband. Moreover, he described how appellant intentionally helped him to commit the murder. For some time prior to the date of the murder, appellant had made a series of complaints to Olson about her husband and his treatment of her. She repeatedly suggested to Olson that she wanted someone to kill her husband for pay. Olson did not know Renier so appellant wrote out in her own handwriting her husband's schedule and the license number on vehicles he drove. Appellant admits she wrote out the schedule, which did not contain the license number of the vehicle she customarily drove.

On the night of April 3, 1982, Olson spent two hours with appellant at the Red Lion Bar in Duluth. Appellant was drinking heavily and was upset with her husband. She told Olson her husband was bowling that night. Olson offered to kill Renier. Thereupon appellant drove Olson to his residence where he changed clothes. She then drove him to a Bridgeman store close to the bowling alley, where Olson located Renier's jeep by its license number. Since Olson did not know Renier by sight, he waited for someone to approach the jeep. When Renier appeared, Olson solicited a ride, claiming he lived near Renier. Upon reaching a vacant lot, Olson pulled a gun on Renier, ordered him to stop, and then shot him five times. Olson returned the jeep to the area of the bowling alley, and called appellant for a ride home. Instead, however, he decided to and did walk to her home. He there met appellant and the two then drove to the aerial bridge and discussed the episode.

Olson's testimony was corroborated by other evidence. The state had appellant's handwritten note detailing her husband's activities and accurately describing his vehicles and their license numbers. This note

had been found in Olson's apartment. The police found Olson's shoe prints, both at the murder scene and outside of appellant's home. Appellant drove Olson to and from the area of the murder. Olson's roommate testified she saw appellant and Olson together at Olson's home the night of the murder and that Olson was changing clothes. Following the murder appellant wired Olson $500 after he had gone to Texas. Appellant derived significant financial benefits from the death of her husband. While admittedly some of this evidence was disputed at trial, it appears clear that there was substantial evidence of appellant's participation in her husband's murder to justify the jury's verdict of guilt.

One week after appellant's trial, her sister, Connie Spaulding, went to appellant's trial attorney and told him that she had hired Olson to harm Steven Renier and that she had done so without appellant's knowledge. Spaulding insisted that appellant was innocent, but that she was not. This statement of Connie Spaulding, which contained other information not revealed at trial, was tape-recorded by appellant's attorney without Spaulding's knowledge or consent. This statement directly contradicted numerous portions of Spaulding's testimony in behalf of appellant at appellant's trial. Most significantly, Spaulding acknowledged in this statement that her trial testimony was designed to protect appellant from the "implications" of appellant having given Olson rides to and from the vicinity of the murder. Spaulding also admitted several instances of her own perjury at the first trial and that she had told appellant to lie under oath because it would enhance the probability of a not guilty verdict.

Subsequently, appellant petitioned for, and was granted, a postconviction hearing. Appellant claimed that she was entitled to a new trial. At the postconviction hearing, Connie Spaulding exercised her fifth

was essentially consistent. Appellant's case at trial depended to a great degree on discrediting Olson. In spite of numerous attempts to impeach Olson, the jury believed him. The Rem-

ington affidavit is merely cumulative for impeachment. *See State v. Garasha,* 358 N.W.2d 657, 659–60 (Minn.1984). *See also State v. Olsen,* 258 N.W.2d 898 (Minn.1977).

amendment right to remain silent. Todd Olson, however, did testify. Appellant concedes his testimony was consistent with his trial testimony.

In addition to attempting the introduction of the Spaulding statement, appellant called John Messina, who testified that prior to the murder a Patrick James Fryke told him that Connie Spaulding had approached Fryke about killing or harming Steven Renier. Fryke had died over a month before appellant's trial began.

Appellant testified in her own behalf at the postconviction hearing. During this testimony, appellant admitted several instances of intentional perjury during her trial testimony. Appellant stated that she perjured herself at her sister's request in order to protect herself and her sister whom she strongly suspected, before trial, to have played a role in the murder. In fact, appellant admitted that she and her sister agreed and planned before trial to "bet on the verdict." Appellant's postconviction testimony, however, directly contradicts numerous claims made by her sister in the post-trial tape-recorded statement, particularly with respect to why appellant drove Olson to and from the vicinity of the murder and as to appellant's whereabouts after giving Olson the latter ride.

At the postconviction hearing, the trial court excluded the hearsay tape-recorded statement of Connie Spaulding, as well as the hearsay statement of Fryke to Messina. Appellant now contends that these statements constitute "newly discovered evidence" warranting a new trial. In addition, she claims that the state's failure to disclose the hearsay statement of Fryke violates her due process rights and the criminal discovery rules and requires that she be granted a new trial.

1. Appellant asserts that the Spaulding statement falls within the recognized hearsay exception for declarations against penal interest. Rule 804(b)(3) of the Minnesota Rules of Evidence sets forth this exception for unavailable witnesses and provides, in pertinent part:

A statement * * * so far tended to subject [the declarant] to * * * criminal liability * * * that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances *clearly indicate* the trustworthiness of the statement.

Minn.R.Evid. 804(b)(3) (emphasis added).

■ Both parties agree that Spaulding was an unavailable witness under Minnesota Rules of Evidence 804(a)(1) because she refused to testify at the postconviction hearing based upon the fifth amendment privilege against self-incrimination. It is also apparent that her statement is clearly against penal interest because during the course of the conversation with appellant's trial attorney, Spaulding confessed her complicity in the murder. Consequently, if corroborating circumstances clearly indicate the trustworthiness of the statement, it is admissible as direct evidence. *State v. Higginbotham*, 298 Minn. 1, 212 N.W.2d 881 (1973).

■ The parties strenuously dispute whether corroborating circumstances clearly indicate the trustworthiness of Spaulding's statement. We cannot, however, accept appellant's argument that the statement is trustworthy because: (1) Spaulding's statement itself contradicts appellant's postconviction testimony; (2) Spaulding is an admitted perjurer; (3) Spaulding admits conspiring with appellant in an attempt to mislead the trial jury; (4) the witnesses corroborating Spaulding's statement are appellant's sister, brother, sister-in-law and lover—each of whom have every reason and motive to fabricate for appellant; (5) Spaulding has never gone to the authorities with this information; and (6) Spaulding's version of the murder does not negate any of the crucial facts that ultimately convicted appellant.

This court's decision in *Higginbotham* is directly on point. In *Higginbotham*, a friend of the murderer confessed to the

murder. The court, however, refused to admit the friend's confession after the friend made himself unavailable by asserting his fifth amendment right against self-incrimination. In holding the confession inadmissible, we stated, in words equally applicable to the instant case:

> Because hearsay statements tending to exculpate the accused must be regarded with suspicion, we hold that, to be admissible, declarations against penal interest must be proven trustworthy by independent corroborating evidence that bespeaks reliability.

> \* \* \* \* \* \*

> It is also likely that [defendant's friend], who lived with defendant's family and was often referred to as defendant's brother, fabricated a false confession out of a desire to free his close friend. \* \* \* To admit [defendant's friend's] exculpatory statement at defendant's trial would be to admit demonstrably incredible hearsay and would constitute, as the trial judge concluded, a "fraud on the public."

*Id.* at 5–6, 212 N.W.2d at 883.

2. Appellant likewise asserts that Messina's testimony relative to Fryke's alleged statement should be admissible under the residual hearsay exception for statements of unavailable witnesses found in Minnesota Rules of Evidence 804(b)(5). Insofar as material, that rule provides:

> A statement not specifically covered by any of the foregoing exceptions *but having equivalent circumstantial guarantees of trustworthiness,* if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence \* \* \*

Minn.R.Evid. 804(b)(5) (emphasis supplied). Critical to a determination of admissibility is whether Messina's statement about Fryke's alleged statement to him has the "equivalent circumstantial guarantees of trustworthiness." We conclude, as did the trial judge, that it does not.

During the course of the investigation of Renier's death, a sheriff's deputy learned that Fryke may have been approached by *appellant* to request that Fryke kill her husband. The officer interviewed Fryke, who adamantly denied having ever been approached by either appellant or Spaulding concerning a request to harm or kill Renier. Thus, Fryke, before he died, had positively denied the substance of the alleged statement. Moreover, Messina did not come forward with this testimony during the pretrial investigation or during the trial itself. Also, Messina is a personal friend of both appellant and Spaulding and thus possessed a strong motive to fabricate a story consistent with the "new version" of the murder. Finally, Spaulding, in her post-trial statement to appellant's attorney, never stated or intimated that she had ever had such a conversation with Fryke. Thus, we affirm the trial court's determination that Messina's testimony of Fryke's alleged statement lacked the "circumstantial guarantees of trustworthiness." Consequently, it too was inadmissible. Based upon our resolution of the hearsay issues, it is unnecessary to address the newly-discovered evidence issue. A different result could not be obtained on retrial because neither statement would be admissible in a new trial.

3. Finally, appellant contends that she is entitled to a new trial because the prosecution failed to disclose that officers had learned that *appellant* (or her sister) may have approached Fryke to hire him to kill or harm Renier. As indicated, the deputy sheriff interviewed Fryke before the latter's death, and Fryke adamantly denied that he had been approached by either for the alleged purpose. In fact, the deputy sheriff made no report of the interview following Fryke's denial. Based upon this

record, the trial court held that non-disclosure violated neither Rule 9.01, subd. 1(6) of the Rules of Criminal Procedure nor appellant's right to due process.

 Rule 9.01, subd. 1(6) of the Rules of Criminal Procedure imposes a duty on the prosecuting attorney to disclose any material or information that tends to negate the guilt of the accused. This rule, in essence, is a restatement of the due process rights of an accused as originally stated in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). Because Fryke adamantly denied that he had been approached by anyone to harm or kill Renier, it cannot be said that his alleged statement to Messina tends to negate the guilt of the accused. There is here no claim that the state was intentionally hiding or destroying evidence, nor any allegation that the state was acting in bad faith. *See, California v. Trombetta,* —— U.S. ——, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984); *Killian v. United States,* 368 U.S. 231, 242, 82 S.Ct. 302, 308, 7 L.Ed.2d 256 (1961). The investigating officer simply checked out a lead and found it went nowhere with respect to solving this crime.

 But even should it be assumed that the prosecution had an obligation to disclose, appellant was not prejudiced by nondisclosure. As indicated above, Messina's testimony is inadmissible hearsay. More importantly, even if it were admissible, the new jury would learn that Fryke adamantly denied the substance of the statement prior to his death. That, combined with the fact that both Messina and Spaulding were available as witnesses prior to the first trial, and that neither found it advisable to disclose this "new information" until after appellant was convicted, clearly shows that the prosecutor's failure to disclose the Fryke interview resulted in no prejudice to appellant. *See, State v. Ture,* 353 N.W.2d 502, 515 (Minn.1984); *State v. Dye,* 333 N.W.2d 642, 644–45 (Minn.1983).

Affirmed.