**In the Matter of Clifford E. SCHROEDER, Ph.D., License No. C–269.**

**No. C2–87–1237.**

Court of Appeals of Minnesota.

Nov. 24, 1987.
Review Denied Jan. 28, 1988.

James R. Martin, Faribault, for relator Schroeder.

Hubert H. Humphrey, III, Atty. Gen., Penny Troolin, Sp. Asst. Atty. Gen., Minneapolis, for respondent Minnesota Bd. of Psychology.

Heard, considered and decided by HUSPENI, P.J., and SEDGWICK and LOMMEN *, JJ.

## OPINION

A. PAUL LOMMEN, Acting Judge.

This appeal is from a disciplinary action imposed upon relator by the Minnesota Board of Psychology for failure to report incidents of sexual abuse of children and failure to obtain written consent to release information. We affirm.

## FACTS

Relator Clifford E. Schroeder is a duly licensed consulting psychologist. On June 11, 1987, respondent Minnesota Board of Psychology (Board) issued an order placing relator's license in "conditional status for an indefinite time." The order further provided relator refrain from treatment of cases involving sexual abuse while relator's license is in "conditional status." In addition, the order provided relator's retention

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

of license is conditional upon attending "consultations to discuss ethical issues of professional standards of practice" for two years. Relator is to report periodically to the Board, as is consultant, regarding relator's participation and understanding of topics discussed.

Disciplinary action arose from two separate instances involving clients who committed sexual abuse of children. The Board, after consideration of the record, concluded (1) relator made unauthorized disclosures of private information relating to sessions with clients 2 and 3 [1] in violation of the Board's rules of conduct, and (2) relator failed to report incidents of child sexual abuse in violation of Minnesota statutes and rules.

Factual background of the two clients is necessary in light of relator's arguments.

In the first instance 2, an 82–year–old grandfather, had been confronted by his family following the sexual abuse of an 11–year–old granddaughter, handicapped by Prader–Willi Syndrome, and other children, including his own daughters when they were children. As a result of the confrontation, 2 was sent to relator. Relator was referred to the family by 2's medical doctor. One of 2's daughters contacted relator prior to consultation to warn of 2's uncooperativeness, relate incidents of sexual abuse of children committed by 2, and request she hear from relator regarding 2's appointments. After meeting with 2 and his wife, relator sent a letter to 2's daughter assessing 2's attitude. The letter was sent without obtaining a release signed by 2 or his wife.

The incident of 2's abuse of his granddaughter happened in November 1982 in her home. The granddaughter's father, 2's son, was home at the time and intervened when he heard noises coming from a bedroom. While the family was aware of 2's long-standing behavior toward children, it was this incident that led to the confrontation of 2 by his family and 2's evaluation by relator. Relator saw 2 twice in the spring of 1983.

Relator has no record nor recollection of reporting 2's sexual abuse of his granddaughter or other children. Relator said it did not occur to him to report 2.

The second instance in this appeal concerns a 15–year–old boy (hereinafter 3) who, while babysitting, sexually abused three younger boys. This happened early in 1985. The boys, brothers, lived next door to 3. The boys' parents went to their pastor for advice. 3's mother also contacted the pastor for the purpose of obtaining counseling for her son. The pastor referred her to relator. In addition, the pastor called relator to arrange for counseling of 3 and his parents. Relator first saw 3 and his parents on January 18, 1985. Relator's report of sexual abuse committed by 3 was received by Waseca County Welfare and Social Services Department on March 1, 1985, five weeks after relator learned of the sexual abuse and after this abuse had been reported by someone else.

## ISSUES

1. Should the Minnesota Board of Psychology's order disciplining relator for failure to report incidents of child sexual abuse and failure to obtain written releases from clients be upheld under the scope of judicial review provided by the Minnesota Administrative Procedures Act?

2. Does Minnesota's reporting law violate the constitutional right of privacy and the right not to testify against oneself?

3. Was relator's right to due process violated?

## ANALYSIS

1. Minnesota's Administrative Procedures Act, chapter 14, provides the scope of judicial review of administrative agencies:

In a judicial review under sections 14.-63 to 14.68, the court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the admin-

1. Throughout this opinion numbers are used in reference to relator's clients.

istrative finding, inferences, conclusion, or decisions are:

(a) In violation of constitutional provisions; or

(b) In excess of the statutory authority or jurisdiction of the agency; or

(c) Made upon unlawful procedure; or

(d) Affected by other error of law; or

(e) Unsupported by substantial evidence in view of the entire record as submitted; or

(f) Arbitrary or capricious.

Minn.Stat. § 14.69 (1986).

■ Agency decisions enjoy a presumption of correctness. *Crookston Cattle Co. v. Minnesota Department of Natural Resources,* 300 N.W.2d 769, 777 (Minn.1980). Courts should afford special deference to an agency's expertise, knowledge, education, and experience in the field of its technical training. *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977).

■ An agency's factual findings are to be reviewed under the substantial evidence test. *Peoples Natural Gas Co. v. Minnesota Public Utilities Commission,* 342 N.W.2d 348, 351 (Minn.Ct.App.1983); *see generally Minnesota Life and Health Insurance Guaranty Association v. Department of Commerce,* 400 N.W.2d 769, 772 (Minn.Ct.App.1987).

*Reserve Mining* states substantial evidence is

1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;

2) more than a scintilla of evidence;

3) more than "some evidence;"

4) more than "any evidence;" and

5) evidence considered in its entirety.

*Reserve Mining Co.,* 256 N.W.2d at 825.

The reviewing court should use this test to evaluate the evidence considering the entire record, and affirm if the agency decision is lawful and reasonable. *Minnesota Life and Health Insurance Guaranty Association,* 400 N.W.2d at 772.

■ Relator argues the reporting laws in 1983 and 1985 were not clear. He maintains since "grandparent" is not specifically listed in the statute as a possible perpetrator, then 2 was not capable of committing sexual abuse under the statute. Relator also argues since 2 was not babysitting or otherwise responsible for his granddaughter's care, he is not capable of child sexual abuse under the statute. Relator's rationale completely ignores the stated policy of Minn.Stat. § 626.556, subd. 1 (1982):

The legislature hereby declares that the public policy of this state is to protect children whose health or welfare may be jeopardized through physical abuse, neglect or sexual abuse; to strengthen the family and make the home safe for children through improvement of parental and guardian capacity for responsible child care; and to provide a safe temporary or permanent home environment for physically or sexually abused children.

In addition, it is the policy of this state to require the reporting of *suspected* neglect, physical or sexual abuse of children; to provide for the voluntary reporting of abuse or neglect of children; to require the investigation of such reports; and to provide protective and counseling services in appropriate cases.

*Id.* (emphasis added).

It is not necessary the grandfather specifically had the responsibility of his granddaughter charged to him by the child's parent, his son; it is sufficient he was alone with his grandchild.

■ In addition, the reporting law is not limited to sexual abuse which in fact occurred. It mandates a report whenever there is "knowledge of or *reasonable cause to believe* a child is being * * * sexually abused." Minn.Stat. § 626.556, subd. 3 (1982) (emphasis added).

■ Relator further argues since the sexual abuse in both instances occurred in the past, he concluded it was not on-going and therefore did not fit the statute, which reads: "is being" sexually abused. This argument also is without merit and leads to an absurd result since it places relator in an investigative and decision-making role which is reserved for county officials.

**440**

In this matter, there were two hearings in response to allegations of failure to report child sexual abuse and failure to obtain written release from clients before relator shared confidential information with a third party. At the hearings, relator had an opportunity to explain his position. After deliberation, the hearing examiners ordered relator to attend consultations with a Board-approved psychologist for the purpose of helping relator better understand ethical aspects of his profession. It was explained this action was not designed to punish relator but to educate him. Relator contested this decision. The matter was heard before an administrative law judge with relator represented by counsel. At this proceeding, evidence was admitted and testimony taken that proved relator had not reported, pursuant to Minn.Stat. § 626.556, incidents of sexual abuse of children.

The reporting law in effect at the time of 3's sexual abuse of children stated:

(a) "Sexual abuse" means the subjection by a person responsible for the child's care, or by a person in a position of authority, as defined in section 609.-341, subdivision 10, to any act which constitutes a violation of sections 609.-342, 609.343, 609.344, or 609.345, or sections 609.364 to 609.3644. Sexual abuse also includes any act which involves a minor which constitutes a violation of sections 609.321 to 609.324 or 617.246.

(b) "Person responsible for the child's care" means a parent, guardian, teacher, school administrator, or other lawful custodian of a child having either full-time or short-term care responsibilities including, but not limited to, day care, baby sitting whether paid or unpaid, counseling, teaching, and coaching.

Minn.Stat. § 626.556, subd. 2 (1984).

It is not disputed 3 was a "person responsible for the child's care" within the meaning of subdivision 2 when he sexually abused three children while babysitting them. Relator admits this, and admits he was aware of the reporting requirement. Yet he failed to report the incidents of abuse to the authorities for five weeks.

■ The Board found a report made five weeks late cannot be construed to have been made immediately, as required by law and the Board's Rules of Conduct. While the reporting law at the time did not define the word "immediately," it is well-established under the canons of statutory construction that words are to be construed according to their common and approved usage, unless they are technical or have acquired special meaning. Minn.Stat. § 645.08(1) (1986). The word "immediately" is not technical, nor has it acquired special meaning.

The canons of statutory construction further provide:

The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions.

When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:

(1) The occasion and necessity for the law;

(2) The circumstances under which it was enacted;

(3) The mischief to be remedied;

(4) The object to be attained;

(5) The former law, if any, including other laws upon the same or similar subjects;

(6) The consequences of a particular interpretation;

(7) The contemporaneous legislative history; and

(8) Legislative and administrative interpretations of the statute.

Minn.Stat. § 645.16 (1986).

In the interpretation of statutes, the courts are required to discover and effectuate legislative intent, to consider objects which the legislature seeks to ac-

complish by the statute and the mischief sought to be remedied, and to avoid a result which would be absurd or would do violence to the language of the statute.

*Peterson v. Haule,* 304 Minn. 160, 170, 230 N.W.2d 51, 57 (1975). It is clear the legislative intent of Minnesota's reporting law is protection of children from neglect or abuse, physical or sexual.

Since relator admitted confusion about his understanding of statutory and ethical duties as a psychologist, the Board's order mandating consultations regarding these duties was appropriate. It is apparent from the record relator's intentions were well-meaning however misplaced in view of the policy behind the reporting statute.

■ 2. Relator challenges the constitutionality of the reporting laws. Specifically, as it relates to the rights of privacy of clients and the right one has not to testify against oneself.

A challenge to the constitutionality of a statute meets formidable statutory construction opposition. *State on Behalf of Forslund v. Bronson,* 305 N.W.2d 748, 751 (Minn.1981). In addressing the constitutionality of legislative enactments, the Minnesota Supreme Court has outlined the role of courts:

In cases that challenge the constitutionality of a statute, the law is presumed to be constitutional. *Head v. Special School District No. 1,* 288 Minn. 496, 506, 182 N.W.2d 887, 894 (1970), certiorari denied sub nom., *Minneapolis Federation of Teachers Local 59 v. Spannaus,* 404 U.S. 886, 92 S.Ct. 196, 30 L.Ed.2d 168 (1971). An act will not be found unconstitutional unless its invalidity is clear or it is shown beyond a reasonable doubt to violate the constitution. E.g., *Grobe v. Oak Center Creamery Co.,* 262 Minn. 60, 61, 113 N.W.2d 458, 459 (1962); *State v. Lanesboro Produce & Hatchery Co.,* 221 Minn. 246, 255, 21 N.W.2d 792, 796 (1946). We declare a law unconstitutional only if absolutely necessary, and then only with great caution. E.g., *City of Pipestone v. Madsen,* 287 Minn. 357, 363, 178 N.W.2d 594, 598

(1970); *Minneapolis Gas Co. v. Zimmerman,* 253 Minn. 164, 173, 91 N.W.2d 642, 650 (1958); *State v. Lanesboro Produce & Hatchery Co.,* 221 Minn. 255, 21 N.W. 2d 796.

*Id.* (quoting *City of Richfield v. Local No. 1215,* 276 N.W.2d 42, 45 (Minn.1979).

Whatever the constitutional objections to given legislation may be, litigants not hurt by the provision under attack *have no standing* in court to urge such objections. Courts will not "listen to an objection made to the constitutionality of an act by a party whose rights it does not affect."

*State v. Hoffman,* 159 Minn. 401, 403, 199 N.W. 175, 176 (1924) (emphasis added). Even if relator could assert his client's right to privacy, this right, like other constitutional rights, is not absolute. It must yield where there is a compelling state interest.

In *State v. Odenbrett,* 349 N.W.2d 265 (Minn.1984) the Minnesota Supreme Court referred to the state's "compelling interest in identifying and protecting the victims of child abuse." *Id.* at 269 n. 5. Moreover, the court acknowledged the need to balance "the patient's interest in his privacy with the state's need to intrude on that privacy." *Id.* at 269.

■ 3. Relator's due process argument is without merit. It focuses on the untimeliness of the hearing before the Board. While there were more than two years between relator's evaluation of 2 and the first hearing, there is no evidence in the record as to when the Board received complaints against relator. According to respondent, the Board has no control over the timing of complaints, and "it is not unusual for there to be a lag time before allegations of misconduct reach the Board."

### DECISION

The order of the Minnesota Board of Psychology disciplining Dr. Clifford E. Schroeder for failure to report incidents of child sexual abuse pursuant to Minn.Stat. § 626.556, and for failure to obtain from

clients a written consent to release information is affirmed.

Affirmed.