STATE of Minnesota, Appellant,

v.

Richard Kevin WILLETTE, Respondent.

No. CX–87–2149.

Court of Appeals of Minnesota.

March 22, 1988.

Review Denied May 16, 1988.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Michael Lynch, Kandiyohi Co. Atty., Warren A. Kochis, Asst. Co. Atty., Willmar, for appellant.

C. Paul Jones, State Public Defender, Susan J. Andrews, Asst. Public Defender, St. Paul, for respondent.

Considered and decided by RANDALL, P.J., and LANSING and MULALLY,* JJ., without oral argument.

## OPINION

LANSING, Judge.

The State of Minnesota appeals a pretrial order prohibiting the use of certain testimony at respondent Richard Willette's trial for criminal sexual conduct in the first degree. We remand for reconsideration.

## FACTS

Around midnight on August 1, 1987, respondent's wife, Sandra Willette, telephoned the Kandiyohi County Sheriff's Department and asked the dispatcher to send someone to meet her at a local bar. When a deputy sheriff arrived, she told him that her husband had told her he had sexually molested S.L.P., an unrelated seven-year-old girl who, along with her mother, was living with the Willettes.

According to Sandra Willette's statement, her husband had told her he had gone into S.L.P.'s room at about 1:00 a.m. on August 1 and had her suck on his penis while he played with her vagina. He said that later that morning he had taken S.L.P. on a canoe ride across a lake, pulled up on shore, and again had S.L.P. suck on his penis while he played with her vagina. Willette told his wife that he thought S.L.P. was "sweet" and that "he wanted to do it again." Sandra Willette could not personally substantiate the report and in fact told the deputy that she did not know

whether it was true, as Willette had lied to her in the past just to get her reaction.

After hearing Sandra Willette's statement, the deputy sheriff drove out to the Willettes' trailer to talk to S.L.P. and her mother about leaving that residence. S.L.P.'s mother refused to let her daughter be awakened at 3:00 a.m. to speak with the police, but she said that she and S.L.P. would leave for Willmar in the morning.

The next morning, Sandra Willette left with S.L.P. and her mother and informed the deputy sheriff of their new location. Although Sandra Willette told the deputy that all three of them would be available to discuss the incident that day, the deputy sheriff did not feel competent to conduct the interview with S.L.P. and told Sandra Willette that an investigator would talk with them.

The investigator arrived the next morning and conducted a tape-recorded interview with S.L.P., her mother and Sandra Willette. S.L.P.'s statement confirmed that the incidents of sexual abuse reported by Sandra Willette occurred. Slight discrepancies emerged between S.L.P.'s statement and Sandra Willette's statement. S.L.P. reported that a third incident had occurred later in the day, while Sandra Willette was aware of only two incidents to which Richard Willette had admitted. In addition, Sandra Willette stated that Richard Willette had told her he had inserted a finger into S.L.P.'s vagina, while S.L.P. stated that he had not. A similar discrepancy existed as to whether Richard Willette had ejaculated.

S.L.P.'s mother stated that she had moved in with the Willettes so that Sandra Willette could watch S.L.P. during the summer months when she was not in school. She believed S.L.P. was getting proper care until she learned of the alleged sexual abuse. S.L.P.'s mother was at work in the early morning hours of August 1, when the first incident allegedly occurred. Her ex-roommate, Joyce Brenner, was at the Willettes', but the record does not indicate whether she was formally in charge of

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

taking care of S.L.P. It appears from Sandra Willette's statements that Joyce Brenner had taken Richard Willette out for a birthday drink on the evening of July 31 and, after returning, fell asleep on the couch. Although Joyce Brenner was babysitting S.L.P. on the evening of August 1, when Sandra Willette made her initial report to the deputy, the record does not indicate that the babysitting was ongoing. It is unclear who, if anyone, was responsible for S.L.P. at the time the incidents occurred.

Richard Willette was charged with first-degree criminal sexual conduct in violation of Minn.Stat. § 609.342, subd. 1(a) (1986). He moved for an order prohibiting Sandra Willette's testimony at trial on the ground of marital privilege and further prohibiting the deputy sheriff or the investigator from testifying to Sandra Willette's statements to them. The trial court granted both motions, and the state appealed that aspect of the order which barred the testimony of the police officers.

### ISSUE

Does the marital privilege statute bar spousal testimony or other evidence of a marital communication in which one spouse admits to the sexual abuse of an unrelated child staying with the spouses?

### ANALYSIS

The marital privilege statute provides: A husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent, nor can either, during the marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during the marriage.

Minn.Stat. § 595.02, subd. 1(a) (Supp.1987). The statute bars either spouse from testifying against the other during the marriage and also precludes testimony on marital communications during or after the marriage. The statute is expressly inapplicable to a "proceeding for a crime committed by one * * * against a child *under the care of either spouse.*" *Id.* (emphasis added).

In his motion for the preclusion of Sandra Willette's testimony, Richard Willette argued that the marital privilege statute applied because S.L.P., the victim of the alleged abuse, was the child of an unrelated woman and under the care of Joyce Brenner. The state did not attempt to refute this argument, but argued that the privilege statute would not bar the police officers' testimony on Sandra Willette's statements to them.

The trial court determined that the officers could not testify to Sandra Willette's statements because the substance of their testimony was derived from a privileged marital communication and was therefore inadmissible. The court buttressed its holding by reasoning that Sandra Willette's unavailability for cross-examination on her statements to the police would make their admission a violation of Richard Willette's right of confrontation. The court concluded that Richard Willette could "combine the spousal privilege with the right to confront a witness to build an insurmountable barrier within the chain of statements" and ordered the officers' testimony precluded. In the same order the court ruled that Sandra Willette's testimony was barred by her husband's exercise of his marital privilege. The state did not specifically appeal this part of the order.

However, the trial court's order barring the officers' testimony is premised on Sandra Willette's unavailability for confrontation, which arises solely from Richard Willette's claim of marital privilege. Because the confrontation issue would not have arisen had the trial court not concluded that marital privilege barred Sandra Willette's testimony, the order squarely presents for review the issue of the applicability of the marital privilege to spousal testimony concerning child abuse. The state's failure to argue or appeal the marital privilege portion of the order does not change our point of view. As the Minnesota Supreme Court recently observed, "[w]e see no reason why we may not see what is in plain sight simply because the state has

chosen not to." *State v. Warren,* 419 N.W.2d 795 (Minn. Feb. 26, 1988) (State's concession that no factual basis existed was premised on a misconception of the law and was not binding on appeal).

While we find no reported cases construing the child abuse exception to the marital privilege statute, we believe that the trial court should reconsider its marital privilege holding in light of the 1987 amendment to Minn.Stat. § 595.02, subd. 1(a). Whether S.L.P. was related to either Willette is not the determinative issue. Her mother testified that they were staying with the Willettes so that Sandra Willette could look after S.L.P. during the day, and it is certainly arguable that S.L.P. was under Richard or Sandra Willette's care, when the alleged incidents occurred, particularly since one such incident allegedly occurred when Richard Willette took S.L.P. across the lake in a canoe to be alone with her.

The primary oversight, however, is the failure to consider the applicability of an even more specific statute: the Minnesota Child Abuse Reporting Act. Minn.Stat. § 626.556, was enacted in 1975 to "protect children whose health or welfare may be jeopardized through physical abuse, neglect, or sexual abuse." Minn.Stat. § 626.556, subd. 1 (1986). The Act provides, in pertinent part, that

> [n]o evidence relating to the * * * abuse of a child or to any prior incidents of * * * abuse involving any of the same persons accused of * * * abuse shall be excluded in any proceeding arising out of the alleged * * * sexual abuse on the grounds of privilege set forth in section 595.02, subdivision 1, paragraph (a) [the marital privilege statute] * * *.

Minn.Stat. § 626.556, subd. 8. Because the Act contemplates law enforcement investigation of abuse reports, *see* Minn.Stat. § 626.556, subd. 10, child abuse prosecutions are "proceedings" in which evidence may not be excluded because of marital privilege. *See State v. Suttles,* 287 Or. 15, 597 P.2d 786 (1979) (Oregon statute abolishing marital privilege in cases of child abuse intended to apply to criminal prosecutions).

The Act defines "sexual abuse" as

> the subjection by a person responsible for the child's care, or by a person in a position of authority, as defined in section 609.341, subdivision 10, to any act which constitutes a violation of section 609.342 * * *.

Minn.Stat. § 626.556, subd. 2(a). A "person responsible for the child's care" includes any "lawful custodian" of a child who has "short-term care responsibilities including, but not limited to, * * * babysitting whether paid or unpaid * * *." *Id.,* subd. 2(b). This definition has been broadly applied. *See Matter of Schroeder,* 415 N.W.2d 436, 439 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Jan. 28, 1988) (grandfather who had no babysitting responsibilities was nonetheless a "person responsible for" his granddaughter's care when he was alone with her).

Similarly, "person in a position of authority" is broadly defined to include any

> person who is charged with any duty or responsibility for the health, welfare, or supervision of a child, either independently or through another, no matter how brief, at the time of the act.

Minn.Stat. § 609.341, subd. 10 (1986).

The statute under which Willette was charged, Minn.Stat. § 609.342, subd. 1(a), does not require that an accused have used a position of authority over the complainant to cause submission to sexual contact. However, the definition applies to the Act's additional protections, such as the exclusion of the marital privilege, and it is therefore necessary to determine whether Willette's relationship to S.L.P. constituted a position of authority. *Cf. State v. Hall,* 406 N.W.2d 503 (Minn.1987) (evidence that complainant babysat for defendant and that he had threatened her was sufficient to support finding of "position of authority"); *State v. Bird,* 292 N.W.2d 3 (Minn. 1980) (evidence that complainant was occasionally left in defendant uncle's care and that he threatened her with "trouble" if she refused sufficed to support finding of position of authority); *State v. Waukazo,*

269 N.W.2d 373 (Minn.1978) (adult son of complainant's foster parents was in a position of authority over complainant).

If Willette's actions charged under Minn. Stat. § 609.342 constitute "sexual abuse" as defined by the Act, the marital privilege would not apply to this prosecution. Although no reported case has construed the marital privilege exception of Minn.Stat. § 626.556, subd. 8, the cases decided under the analogous medical privilege demonstrate the admissibility of confidential communications which relate to the abuse that is being prosecuted. *See, e.g., State v. Andring*, 342 N.W.2d 128, 132–33 (Minn. 1984) (reporting act abrogates doctor-patient privilege to permit evidentiary use of information required to be contained in abuse reports).

The statements in *Andring* were related during the course of therapy which the defendant had sought to overcome problems which led to the abuse, and the *Andring* court was confronted with the conflicting statutory policies of stabilizing home life while protecting abused children. Recognizing the benefits of therapy, the *Andring* court construed the reporting act narrowly to allow for treatment while still permitting discovery of incidents of abuse. *Id.*, 342 N.W.2d at 132.

There is no similar conflict in this case. If it applies, the Act clearly would permit evidentiary use of the information contained in Sandra Willette's statements to the police. While the Act does not specifically address the testimonial aspect of the marital privilege statute, the *Andring* court's approach of weighing competing policy considerations leads to the conclusion that the testimonial privilege would be abrogated as well.

The purpose of the marital testimonial privilege is to promote family harmony by precluding one spouse from testifying against the other without consent. *See Hawkins v. United States*, 358 U.S. 74, 79, 79 S.Ct. 136, 139, 3 L.Ed.2d 125 (1958) (the law should not force or encourage testimony which might alienate spouses or exacerbate domestic differences). However, this justification weakens when one spouse is willing to testify against another; in those circumstances, as the Supreme Court later recognized, "there is probably little in the way of marital harmony for the privilege to preserve." *Trammel v. United States*, 445 U.S. 40, 52, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980).

Given the doubtful utility of the testimonial privilege when one spouse is willing to testify against the other, the policy considerations supporting the privilege are outweighed in cases of child sexual abuse by the statutory policies of protecting children and investigating and prosecuting abuse. We accordingly conclude that Minn.Stat. § 626.556, subd. 8, permits adverse spousal testimony on alleged sexual abuse of children. *See also People v. Corbett*, 656 P.2d 687, 688–89 (Colo.1983) (statute providing that the marital privilege shall not be a ground for excluding "evidence arising out of a child abuse report" construed to preclude invocation of marital privilege to exclude spouse's testimony).

In light of previous cases applying the "position of authority" language of Minn. Stat. § 609.341, subd. 10,[1] and the factual record upon which this case was submitted, we have difficulty imagining how the 32-year-old Willette could not be found to have been in a position of authority over a seven-year-old who resided with him. However, because the applicability of the Child Abuse Reporting Act was not raised before the trial court or argued on appeal, we remand to the trial court for rehearing and reconsideration of its marital privilege ruling in light of the statute.

If the trial court concludes on remand that the marital privilege does not apply to this case, Sandra Willette's availability as a witness may eliminate the State's interest in pursuing the admissibility of her prior statements. If she is called to testify, the purposes for attempting to introduce the police officers' testimony would be substan-

---

1. *See, e.g., Hall*, 406 N.W.2d at 503–04 (30–year-old man and 14–year-old babysitter); *Bird*, 292 N.W.2d at 4 (47–year-old uncle and 14–year-old niece); *Waukazo*, 269 N.W.2d at 374 (25–year-old adult son of 14–year-old girl's foster parents).

tially changed. Even if she is not called to testify and the state renews its attempt to introduce the officers' testimony on her statements, the determination of availability or unavailability will affect the analysis of the right to confrontation, as well as the hearsay analysis. Although we would have preferred not to engage in the conjectural contingencies of an advisory opinion—with its attendant dangers—the concurring opinion's discussion prompts our consideration of the reliability of the statements for purposes of the confrontation clause and the residual hearsay exceptions, Minn.R.Evid. 803(24) and 804(b)(5).

■ We find nothing inherently unreliable about the statements. Sandra Willette voluntarily initiated the report, had no apparent ulterior motive for doing so, and admitted that she did not know whether the alleged abuse had actually occurred. *Compare State v. Hansen*, 312 N.W.2d 96, 103 (Minn.1981) (statements of estranged wife unreliable when she contacted police in response to reward offered for information); *United States v. Sarmiento–Perez*, 633 F.2d 1092 (5th Cir.1981) (custodial confession of a separately tried co-defendant unreliable).

Whether Sandra Willette had first-hand knowledge of the sexual abuse itself is irrelevant to the reliability of her report of Willette's statements. She had first-hand knowledge of those statements, and the reliability of their substance is established by their status as party admissions or statements against interest. Similarly, the declarant, for purposes of applying the excited-utterance exception, is Sandra Willette, not Willette himself, as the reliability of his statements is established if they fall within a recognized exception.

Sandra Willette made her report within a day of Willette's alleged statements to her, and those statements were not of a nature that would be easily forgotten or garbled. The substance of the report is corroborated by S.L.P.'s statement, and the two versions differ in enough respects to make it unlikely that S.L.P. had been coached, particularly since Sandra Willette informed the sheriff's office of S.L.P.'s new location and

suggested an interview the morning after she initially contacted them—before an opportunity to coach would have occurred.

## DECISION

The marital privilege statute does not apply to proceedings arising out of the sexual abuse of a child by a person responsible for, or in a position of authority over, that child.

Remanded for reconsideration in light of Minn.Stat. § 626.556, subd. 8.

RANDALL, Judge, concurring specially.

I concur in the majority's remand to the trial court to consider whether the Minnesota Child Abuse Reporting Act (MCARA) is applicable.

However, I do not join in the majority's advisory comment that "we have difficulty imagining how the 32–year–old Willette could not be found to have been in a position of authority over a seven-year-old who resided with him." A remand to the trial court must be neutral, with both parties given a fair chance and an equal opportunity to present whatever evidence and arguments they deem advisable. I question the advisability of the majority's indication to the trial court how it should rule on a previously unexplored issue which, at the omnibus hearing, will be fact intensive. A reading of MCARA and the cases and statutes cited by the majority leads to the conclusion that just what is "responsibility for a child's care," "lawful custodian," "babysitting, whether paid or unpaid," "position of authority," and "supervision," are issues of paramount importance that both parties need to develop and argue. At this stage, because of the complete lack of previous development by appellant and respondent, it is not proper for us to assume how the issue will come out in front of the trial judge.

In addition, unlike the majority, I would answer the sole issue raised on appeal. As appellant's statement of the case sets out in paragraph five, the issue developed, briefed and argued before the trial court and our court is:

Admissibility of the *officer's* testimony regarding the Defendant's spouse's statements.

Even though we are remanding on the possible applicability of MCARA, the record before us is complete on the issue of whether the trial court properly suppressed the double hearsay testimony of the deputy sheriffs regarding Sandra Willette's statement about what allegedly respondent told her. Appellant, respondent, and the trial court approached that issue from the premise that Sandra Willette (Sandra) did not take the stand at respondent's trial. Her not taking the stand must remain a possibility at this point.[1] If she does not take the stand, I would affirm the trial court's suppression of the double hearsay testimony of the sheriff. The trial court properly sustained respondent's objections of hearsay, and the violation of his sixth amendment right to confront his accusers.[2]

I.

*Hearsay*

The state agrees that introduction of respondent's statements to Sandra through the deputies is double hearsay and admissible only if "each part of the combined statements conforms with an exception to the hearsay rules." Minn.R.Evid. 805. Respondent's hearsay statement to his spouse is admissible as a statement against interest under Minn.R.Evid. 804(b)(3). This satisfies the first hurdle of the hearsay within hearsay problem.

The state then claims the deputies' testimony as to what Sandra told them should be admissible under the residual hearsay exception for statements of unavailable witnesses. A statement that does not fall within the specific hearsay exceptions may be admissible if it has equivalent circum-

stantial guarantees of trustworthiness, and if:

the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purpose of these rules and the interests of justice will best be served by admission of the statement into evidence * * *.

Minn.R.Evid. 804(b)(5); *State v. Renier*, 373 N.W.2d 282, 286 (Minn.1985). Critical to the determination of admissibility is whether the statement has "equivalent circumstantial guarantees of trustworthiness." *Id.* Circumstances which may establish guarantees of trustworthiness include: the declarant was under oath when the statement was made; the statement was made within a reasonable length of time after the incident in question; the declarant was subject to cross examination; and the witness' report was based on firsthand knowledge. *See State v. Hansen*, 312 N.W.2d 96, 102 (Minn.1981).

Here, respondent's spouse did *not* have firsthand knowledge of the alleged sexual conduct, was *not* under oath, and was *not* subject to cross examination when the statements were taken. Not only did Sandra have no firsthand knowledge of the alleged sexual conduct; she told the deputies that she "did not know whether it was true, as Willette had lied to her in the past."

Appellant concedes the state seeks to introduce Sandra's first statement, the evening of August 1, the one on which she has no firsthand knowledge of truth or falsity, as substantive evidence of respondent's guilt. This hearsay is not more probative

---

1. The state, for tactical reasons, can always choose not to put Sandra Willette on the stand, even if she is free to testify. Also, it is possible that after remand and a hearing on the applicability of MCARA, the trial court may yet find that respondent's right to invoke the marital privilege, found in Minn.Stat. § 595.02, subd. 1(a), survives. The answer to that question depends entirely on the parties' presentation to the trial court of appropriate facts and legal arguments. That question is not now before us, the

answer cannot be presumed, and in the interest of judicial economy the question raised on appeal should be answered, even though we are remanding.

2. In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him; * * *. U.S. Const. Amend. VI.

than other evidence available to appellant, as appellant has the testimony of the victim. *See* Minn.R.Evid. 804(b)(5)(B). Also, since it purports to constitute a confession by respondent, this double hearsay has more potential for unfair bias and prejudice than probative value. Minn.R.Evid. 403.

The state further argues that since Sandra Willette was excited and nervous when she told the sheriffs what she claimed respondent had told her the double hearsay is admissible under the "excited utterance" exception. Minn.R.Evid. 803(2). The state overlooks the historical progression and reasoning behind the excited utterance exception. The exception was built into the general hearsay rule on the theory that when the *declarant* "blurts out" something, it is apt to be true. Supposedly, one does not carefully rehearse and then "blurt out" a lie. The exception goes to the presumed reliability of the declarant (the speaker against whom the state wants to use the declaration as evidence), in this case respondent. The excited utterance exception is not available to someone like Sandra, who merely hears a speaker and then passes his words along. The state claims that because Sandra was "excited," she can now tell a third party can testify what the original declarant said.[3] Sandra's excitement has nothing to do with the truth or falsity of the contents of respondent's statement. The excited utterance exception relied on by appellant is without merit.

Given the discretion afforded a trial court in weighing evidence and ruling on motions of suppression, the trial court properly suppressed the double hearsay as not falling within any recognized exception.

On Sandra's second statement to a deputy (August 3rd), appellant claims that they want to offer the testimony of the deputy regarding this August 3rd statement for a non-hearsay purpose, namely, "to show re-

spondent's state of mind." The state argues it therefore falls into the exception provided by Minn.R.Evid. 803(3). Appellant disclaims any intention to offer this second statement as substantive evidence of respondent's guilt. However, a reading of appellant's brief belies the so-called "state of mind" exception to the hearsay rule. Appellant's brief states:

> The details supplied by the respondent through his wife to Officer Kujawa[4] show precisely what the respondent did, what the respondent had the victim do, the number of times the molestation occurred, where it occurred, what times it occurred, and the thoughts of the respondent when he committed the acts.

It could only be argued with one's tongue in one's cheek that testimony about "precisely what the respondent did" and "who with," "how many times," and "where and when," is being offered "only" to show a defendant's state of mind, and not to show that he is guilty of the charge. The trial court properly suppressed this second statement on the same hearsay grounds as the first.

## II.

### *Confrontation Clause*

Even if the statements were deemed admissible under exceptions to the hearsay rule, they still must survive analysis under the confrontation clause before they may be admitted. *Hansen,* 312 N.W.2d at 102. A hearsay statement made by an unavailable witness must bear sufficient "indicia of reliability" to avoid a conflict with the confrontation clause. *Id.* Again, "unsworn, ex parte statements made during police questioning have traditionally been considered as inherently untrustworthy." *Id.* at 103. "Indeed, the purpose of the confrontation clause is to prohibit these *ex*

---

**3.** The state is not claiming that respondent was excited when he related his acts to Sandra, and that therefore his excitement at the time he spoke carries through Sandra to the deputy sheriffs. The state's contention that it is entitled to the utterance exception is based solely on its claim that, if Sandra was excited when she spoke to the deputies, the deputies can now put

into evidence what respondent was supposed to have said to Sandra, who then related it to them.

**4.** The statement of Officer Kujawa is the second statement made August 3, the one here analyzed.

*parte* declarations from being introduced at trial." *Id.*

No balancing act need be performed to see whether suppression of the deputies' hearsay on the grounds of confrontation interferes with getting substantial and important evidence to the jury. At all times, appellant has available the testimony of S.L.P., the alleged victim. The deputies' testimony is not worth much as corroboration, since the deputies got their hearsay from Sandra, who admits she has no first-hand knowledge of what happened. The deputies themselves do not even have independent knowledge that the alleged conversation between Sandra and respondent took place.

It must also be noted under an analysis of the confrontation clause that Minn.R. Evid. 801 through 806 relative to hearsay are general rules which, on the surface, do not distinguish between civil and criminal cases. However, the advisory comments to the rules on hearsay, Minn.R.Evid. 804, point out the difference between civil and criminal cases, and that "the rule is not intended to codify the scope of the sixth amendment." In other words, an attorney may be able to carefully craft double hearsay in a civil case to render it admissible, but fail in a criminal case because of the additional barrier set by the confrontation clause of the sixth amendment. A state rule of evidence is subservient to the Constitution if the two conflict.

The trial court properly suppressed the deputies' testimony on the grounds that its admission as substantive evidence would violate respondent's constitutional rights in a criminal case to confrontation.

I concur in the remand to the trial court to reopen the omnibus hearing and instruct appellant and respondent to develop and argue the issue of whether MCARA affects respondent's marital privilege. If it should turn out that Sandra Willette does not take the stand, I would answer the issue raised on appeal by finding the trial court properly suppressed the hearsay testimony of the deputy sheriffs.[5]

---

5. This concurrence does not address, as it is not before us, the question of whether the deputies can take the stand in rebuttal if Sandra takes the stand, and then respondent takes the stand and denies having admitted to the acts about which she testifies. If that situation should arise, the trial court, at that time, will have to assess the respective arguments of the parties based on the law and the evidence that has been developed to that point in the trial. It is accepted law that, at times, otherwise inadmissible evidence "may" come in during rebuttal as a form of impeachment. This question is not now before this court, and will not be decided.